[Filed November 21, 1887.]

## JOHN KELLER, Respondent, *v.* E. BLEY, Appellant.

STATUTES OF FRAUD—CONTRACTS, WRITTEN—VERBAL MODIFICATIONS OF.—The statutes of this State make a contract not to be performed within one year from the making thereof void, unless the same is in writing. *Held,* in an action where a written contract had been modified by a verbal agreement, which verbal agreement was not to be performed within one year, that oral evidence was admissible, in an action thereon, in order to give an understanding of the surrounding circumstances.

ASSUMPSIT—EVIDENCE, HEARSAY.—In an action for the value of some tools sold, a list of the tools made by a person whose only knowledge of its correctness was hearsay, was offered to show their value. *Held,* the court properly refused the testimony.

JURY—VERDICT OF—VIEW OF PREMISES BY—MISCONDUCT OF ATTORNEY.—The jury with the consent of the parties went to view the premises where the work sued for was done. The attorneys stipulated that one attorney on each side should accompany the jury. Two of the plaintiff's attorneys went in the company of the jury, but had no communication with any of them. Besides these two, one other of the plaintiff's attorneys, with an attorney of the defendant,

went in sight of but were not in company with the jury. *Held,* on motion to discharge the jury, that as the court below had a better opportunity to judge of the motives of the attorneys in mingling with the jurors, the denial to discharge them should be sustained.

JUROR, MISCONDUCT OF.—A juror who went with the others to view the premises, and did not go over the same on account of lameness, but was in sight thereof, was not guilty of misconduct.

APPEAL from Multnomah County. Affirmed.

*E. Mendenhall, F. B. Jolly, A. F. Sears, H. E. McGinn,* and *N. D. Simon,* for Respondent.

*F. V. Drake,* and *McDougall & Bower,* for Appellant.

THAYER, J.—This appeal comes here from a judgment of the Circuit Court for the county of Multnomah. It appears from the transcript that the respondent brought an action against the appellant in said Circuit Court, counting upon three several causes of action. The first cause was upon a contract of sale of certain tools, for the alleged price of $380, upon which he admitted a payment of $25. The second one was for work and labor performed by respondent for the appellant, alleged to have been of the agreed value of $29; and the third one was for work and labor upon a certain written contract, and subsequent parol modification, to clear and grub a tract of 35 acres of land, and to cut into cord-wood all fallen timbers thereon, and all timbers he should cut down in clearing the tract. Said contract contained the mutual agreements of the parties, and the respondent alleged in his complaint, in reference thereto, that he performed the same on his part; that he provided himself with over $400 worth of tools and apparatus to be used in said work, and was progressing therewith, and in compliance with the terms and conditions of the contract, when the appellant refused to comply with his part of it; that he cleared a portion of the tract, and cut into cord-wood 282 cords of wood from the timber referred to; that the clearing at the contract price amounted to $1,112.50, and the cutting of the cord-wood to $352.50, which sums were, respectively, the reasonable value of the work; that the appellant had paid thereon the sum of $746, leaving unpaid

a balance of $719, which the appellant agreed to pay respondent on demand, and the latter agreed to accept in satisfaction thereof the sum of $662.50, and to remove from the premises, and did remove therefrom; that he had frequently demanded payment of said sum of $662.50, but the appellant had failed to pay any part of it.    This sum, with the two other claims, amounted to $1,046.50, which he demanded judgment for.

The appellant denied the first cause of action.    He admitted the second one, but denied the value of the work, and denied the parol modification of the written contract as alleged.    He also denied that respondent was progressing with the work, and in full compliance with the terms and conditions of the contract, when the former refused to comply with his part of it; denied that the respondent cleared the amount of land alleged, or that he cut the 282 cords of wood; denied the value of the work as alleged by the respondent, or that he agreed to pay therefor, or that the respondent agreed to accept, in full satisfaction thereof, the sum of $662.50, or any sum.

And for a further answer, after admitting that the parties modified the terms of the written agreement so far as cutting the wood was concerned, alleged that by the terms of such modification the respondent was to cut all the best wood at the rate of one dollar a cord; that respondent entered upon the performance of the agreement, and did work in clearing, worth, in the aggregate $450, and cut 108 cords of good wood, and 133 cords of rotten, unsound, and unmarketable wood, which was wholly worthless; that respondent so unreasonably delayed the performance of the contract on his part that he gave him notice to quit the premises, and finally put him out by proceedings of forcible entry and detainer, and respondent wholly abandoned the work; that appellant paid him the sum of $738; that respondent did not complete the work in time for a crop as provided in the written contract, and so unskillfully and in such an unworkmanlike manner performed the clearing and the cutting of the wood, that appellant was damaged in the sum of $50, and by reason of the delay, in the sum of $150.

The bill of exceptions shows that respondent gave evidence

at the trial tending to show that the first and third causes of action were an account stated, and of his performance of the work, and the appellant's refusal to comply with the contract upon his part; that the appellant gave evidence tending to show that some of the wood cut was unsound, and decayed, and that the land claimed to have been grubbed was full of hidden stumps; that it would cost a considerable sum of money to clear it in accordance with the contract, and that the use of the land for a crop would have been worth fifteen dollars an acre if it had been properly cleared. It further appears from the bill of exceptions that after the oral testimony had been produced, upon request of respondent and consent of appellant, the jury impaneled to try the issues were allowed to view the premises upon which the work had been done. Before retiring they were properly instructed by the court, and a special bailiff appointed to accompany them and point out the premises, and were put in charge of a regular bailiff of the court. That the jury proceeded to view the said premises accordingly, and the next morning appeared in their proper places in court; and the case being ready for further proceedings, counsel for the appellant moved the court that the jury be discharged from the further consideration of the cause, and that it be set for hearing before another jury, upon the grounds that there had been misconduct on the part of the jury upon the occasion of the view, and that two of the counsel for the respondent had conducted themselves improperly on said occasion, which misconduct consisted in the fact that Chris. Nolan, one of the jurors, did not go onto the premises with the other jurors, but remained separate and apart from them, and that two of the respondent's attorneys had, during the view, accompanied and mingled with the jury, and had made communications with them concerning the cause or matters connected with the case; whereupon the court made a summary investigation of the charges, and found the fact to be that it had been stipulated among the attorneys that one attorney on each side should accompany the jury on the view, but that by some misunderstanding, three attorneys on behalf of the respondent had accompanied the jury, and one attorney for the appellant;

that Drake and Sears went together, and were not in company with, but were in sight of the jury; that two of counsel for respondent walked over the premises, mingling with or being near to the jury; that no conversation with the jurors was had, and no communications were made by them, or either of them, to the jury during said view; that the juror Chris. Nolan, by reason of lameness, was unable to walk over the premises, but remained in a carriage on the highway alongside of, and in view of the greater portion of the premises; thereupon the court overruled the said motion, to which ruling said counsel excepted.

Several exceptions were taken to the admission of testimony, also to the refusal to admit testimony, and to the charge of the judge to the jury. The case involved, mainly, questions of fact, of a character which a jury were peculiarly suited to determine.

*Proof of verbal alteration of contract.* It is claimed by the appellant's counsel that the court erred in allowing evidence of the verbal alterations of the written contract. He contends that the contract was not to be performed within a year after the alleged verbal agreement adding conditions to it, and that the latter comes within the Statute of Frauds. That cause of action, as I understand it, was not to enforce the contract, but to recover for work and labor, upon a promise to pay for the same. Proof of the contract was a circumstance in the particular case, was a part of the general facts, and the proof was merely to give an understanding of the circumstances connected with the affair. It is only when an agreement is sought to be enforced in accordance with its terms that the objection to its invalidity upon such a ground can be raised. If the work had all been done under a void contract, it would not prevent a party from recovering its value, though he would not be entitled to recover damages for the breach of the contract. A verbal contract to do work which, by its terms, is not to be performed within one year, is void; but if the parties treat it as valid until after a part of the work is done, it cannot then be avoided so as to avoid payment of the reasonable value of the work that has been performed. The law, in such case, will imply a promise to pay for work, or other valuable thing obtained under such an agreement, although

XV. OR.—28.

the terms of the agreement cannot be enforced in a court of justice.

*Evidence as to tools.* Said counsel also claims that the court erred in admitting evidence as to what tools respondent got, in order to perform the contract. This evidence was clearly immaterial under the issues of the case, except so far as it tended to prove what the respondent had done in the performance of labor. If it had been offered and received for the purpose of charging the appellant with the expense of the tools, it would have been erroneous, but I do not understand that it was offered for any such purpose; there is a count in the complaint for tools sold, but this evidence was not offered to prove that count. The counsel makes a point upon the court's refusal to admit a list of the tools offered by him to rebut the evidence of the value of the tools. The respondent claimed pay for them in the latter count, but I do not think that a production of a list of the tools would prove their value. The question was, what were they worth? A schedule of them would prove nothing, and could not be used except as a matter of convenience. The counsel claims that it would have shown the improbability of the appellant having offered to pay the amount therefor claimed by the respondent in the complaint. In order to show that, it was not necessary a list of the tools should be made out and given in evidence. Besides, it appeared that the list was made by a person whose knowledge of its correctness was only hearsay.

The court has considered the other exceptions alluded to, and deems them untenable. And I do not think it necessary to refer to them particularly.

*Misconduct of counsel.* The exception, however, to the ruling of the court upon the motion to discharge the jury is entitled to more consideration. I attach no importance to the fact that the juror Nolan did not go on the premises. He went to a place where he could view them, and had a good excuse for not walking over the land, and as long as he did not intend to disregard his duties as juror, his verdict cannot be impeached. If he had failed to view the premises through a designed indifference as to what might have been ascertained, he would probably have been

chargeable with such misconduct as would have required the granting of a new trial. But the act of the two counsel, "who walked over the premises, mingling with, or being near to the jury," is a different matter. I cannot see that they could have had any excuse whatever for being where they were. It was highly improper, and could not fail to leave the impression that their object in mixing in with the jury was to influence them to favor their side of the case. It left a very strong impression that their purpose was to ingratiate themselves into the confidence and good-will of the jury, and practice cunning and artifice to bias their minds. Nor would any protest on their part that it resulted from accident, or thoughtlessness, be likely to be received in extenuation of their conduct. Such occurrences are not apt to arise except by design. It is needless to say that they are wrong, and merit severe rebuke. Every sense of propriety and instinct of common decency condemns such performances.

Any attempt upon the part of an attorney to gain an underhanded advantage over the opposite party in a lawsuit, in any manner, is disgraceful, and when it consists in an effort to tamper with a jury, in the slightest degree, it is infamous. If such practices were to receive the least countenance from the court, and encouragement from the bar, they would soon grow into such a monstrous evil that it would corrupt the fountain of justice. An attorney has no right to regard a lawsuit as a scramble to obtain a favorable decision, nor to adopt unscrupulous means to accomplish any such ends. Such a course is not only a violation of the duty enjoined upon him by the law, but is dishonest and nefarious *in se*, and will always be despised by honest people. It secures a following, but it is necessarily of that class who deal in knavery, and who regard a retainer of an attorney as an employment to do all kinds of dishonorable and dirty work.

I think that the court, when the matter was brought to its attention, and it was ascertained that two of the respondent's counsel "walked over the premises, mingling with or being near the jury," unless there was a reason beyond what we can see, should have promptly set aside the panel, and taxed the respondent with the disbursements incurred by the appellant on account

of the trial. The latter was injured in his defense in consequence of the affair. His counsel, in bringing the matter to the attention of the court, did right; such things should not be allowed to pass unchallenged. But the course taken no doubt prejudiced the client's defense. I have witnessed the trial of too many lawsuits to believe that such a digression in the proceedings would not have that effect. The court's finding, that no conversation with the jurors was had, and no communications made by the two counsel, was hardly a sufficient reason for denying the motion; it did not find that said counsel had any excuse for being where they were, nor that they did not employ arts and insinuations calculated to induce a belief in the minds of the jury that the respondent had done the work well, which it might reasonably be inferred was their purpose in being on the ground. Besides their presence upon that occasion gave rise to a suspicion that justice was not being fairly administered, and tended to incite a general belief that the law is lax and ineffectual in the adjustment of controversies between parties, a sentiment that is in contravention of the public good. And again, it is not always a decisive question, in such cases, whether the conduct that is objected to did injure or not. The language of the authors in Thompson and Merriam on Juries expresses the view I am endeavoring to put forth, which is as follows: "But where the successful party to the suit is shown to have attempted, by improper means, to influence the verdict in his favor, whether by corrupting or intimidating particular jurors, by arousing prejudice in their minds against the opposite party or his cause, or by undue hospitalities or civilities, the verdict will be set aside, on grounds of public policy, as a punishment to the offender, and as an example to others, without reference to the merits of the controversy, and without considering whether the attempt was successful or not." (Rule 3, § 348.) Were the question here involved before this court as an original question, we should unhesitatingly determine it as before indicated, and we regret that the Circuit Court did not find it consistent with its view to pursue that course.

The question, however, is one in which the trial court has a

better opportunity to judge of the motives of the parties, and there is a possibility that the counsel referred to might have been in company with the jury with no purpose to influence their determination. The parties were before that court, and it had a better opportunity to ascertain the incidents and surroundings of the transaction than this court has, and for that reason we have been inclined to defer more to its decisions upon such questions.

In view of the latter considerations, we feel constrained to affirm the judgment appealed from.