Argued June 8, affirmed July 30, 1921.

# NEILSON *v.* TITLE GUARANTY & SURETY CO.

## ET AL.

### (199 Pac. 948.)

**Judgment—Upheld Against Collateral Attack Unless Absolutely Void.**

1.  A judgment must be upheld against a collateral attack upon it unless it is wholly and absolutely void.

**Judgment—Absolutely Void When Obtained After Service by Publication Where No Property was Attached.**

2.  A judgment obtained after service upon the defendant by publication in which no property of defendant was attached, so as to be brought within the jurisdiction of the court, is wholly and absolutely void.

**Attachment—Claim Against Town for Negligent Failure to Obtain Funds for Improvement is not Subject to Attachment.**

3.  A claim against a town for the balance due a contractor based on the negligent failure of the town to levy a tax on the improvement districts to pay the contractor, is one *ex delicto,* and not *ex contractu,* and is not subject to attachment so that an attempted attachment thereof gives the court no jurisdiction on service of a nonresident by publication.

**Attachment—Claims of Owner and Surety Against Contractor are not "Debts" Which Would Support Attachment.**

4.  Claims by an owner against a contractor for breach of the contract and by the surety against the contractor for the amount of its liability for such breach, which are not liquidated, but are contingent and uncertain in amount, are not *bona fide* existing debts in support of which attachment can be levied under Section 296, Or. L., since debt implies a sum of money due on a contract obligation which is fixed and specific in amount.

**Stipulations—Agreement to Hold Town Warrants as Stakeholder Held not to Subject Warrants to Void Judgments.**

5.  Where appeal was contemplated from an order directing a town to issue warrants covering a judgment, an agreement by attorney for the claimant that in lieu of a *supersedeas* he would hold the warrants as stakeholder until the liability of the town to other claimants against the contractor was determined does not subject the warrants to the payment of the other claims where the judgments obtained on them were absolutely void for want of jurisdiction.

---

2.  Judgments whose validity is dependent on attachment, see note in 76 **Am. St. Rep.** 800.

Attorney and Client—Agreement to Subject Client's Property to Payment of Void Judgments is Beyond Attorney's Authority.

6. An agreement by an attorney to subject warrants delivered to him for his client to the payment of claims by others against the client, if broad enough to subject the warrants to such claims, notwithstanding the judgments rendered on them were void, would be beyond the attorney's authority.

From Multnomah: Robert G. Morrow, Judge.

Department 1.

This is an appeal from a decree of the Circuit Court of Multnomah County. Owing to the diversity of interests involved a statement of the issues is somewhat difficult, but is substantially as follows:

"The City of Rainier undertook to improve certain streets and created two improvement districts. It then entered into a contract with one Charles Masters, under which said Masters agreed to furnish the material and do the work for improving certain streets, payment to be made in warrants drawn upon the funds of the improvement districts respectively and in certain warrants drawn on the general fund for the improvement of street intersections. Harry Howard and N. M. Moody were interested in this contract with Masters, Masters and Moody agreeing to furnish a certain sum of money each and Howard to furnish teams and tools. * * Material for the work was purchased from Columbia Contract Company, for which Masters, Howard and Moody agreed to pay $14,243.63. The contract was performed by the contractors and warrants from time to time issued but not for the full amount earned. The city failed to take proper steps to provide the improvement funds, so that there was no money to pay the warrants issued or the amount in excess of warrants issued due the contractors. After this contract had been fully performed Charles Masters on the twentieth day of July, 1911, entered into a contract with the

---

6. Authority of attorney to bind client, see notes in 76 **Am. Dec.** 256; 30 **Am. Rep.** 358.

plaintiff under which he agreed in substance to clear and plow certain lands and to furnish all labor, tools, teams and supplies for this work and to give a bond for his faithful performance of this contract. This bond was given with Masters as principal and the Title Guaranty and Surety Company as surety and bears date July 25, 1911. In this contract neither Howard nor Moody were [was] interested. Masters failed to carry out his contract with the plaintiff, but abandoned the contract and on July 26, 1912, the plaintiff brought suit against Masters and the surety company to recover damages for Masters' failure to carry out this contract. In this suit Masters was not served. The surety company defended and prevailed: *Neilson* v. *Masters*, 72 Or. 463, 81 Or. 422. After this case was disposed of against the surety company, on December 20, 1916, the plaintiff filed a second amended complaint against Masters alone and on the same day filed an affidavit for attachment and an undertaking for an attachment and on that day writ of attachment was issued directed to the sheriff of Columbia County. On the twenty-first day of December the sheriff of Columbia County undertook to garnish the City of Rainier by delivering to the city recorder of said city a certified copy of the writ together with a notice of garnishment by which notice the City of Rainier 'was notified that there was attached all debts, property, money, dues or credits of every nature in its hands or under its control, especially a certain sum of money belonging to said Masters.' The city recorder gave a certificate in writing in which it certified that 'there is no money due or owing from the City of Rainier to the said Masters.' On the twenty-first day of February, 1917, O. F. Montandon made an affidavit in which he says in substance: 'I am an employee of attorneys for the plaintiff in the foregoing action; the complaint in said suit was filed with the clerk of said court on the twenty-sixth day of July, 1912, and summons thereupon issued; a cause of action exists in favor of plaintiff and against the defendant above named and the

subject of the action is to recover damages for the breach of that certain contract wherein Masters, defendant, promised to clear and plow lots 1 to 12, inclusive, of Buena Vista Orchards, situated in Mosier, Wasco. County, Oregon; the defendant has caused the writ of attachment to issue out of the above-entitled court to the sheriff of Columbia County and the said sheriff has duly attached any and all moneys due or owing from the City of Rainier to Masters, the defendant above named; said debt due from the City of Rainier to Masters, the defendant herein, is now the subject of certain litigation now pending in the United States District Court for the District of Oregon. The grounds for the action first above entitled are as follows: That Masters, the defendant, on or about the twentieth day of July, 1911, made, executed and delivered his certain contract with the plaintiff whereby Masters, the defendant, promised and agreed to clear and plow lots 1 to 12, inclusive, of Buena Vista Orchards, situated in Mosier, Wasco County, Oregon, for the sum of $6,100 and made a further contract in writing dated the seventh day of September, 1911, modifying the terms of the above-mentioned contract with respect to the means to be used in the clearing of said land and the time within which the work was to be done and the compensation therefor, all according to the terms of said contract. Plaintiff has performed each and every one of the conditions, obligations and duties imposed by him by said contract; Masters, defendant, defaulted in the performance of said contracts in that all the work done by Masters, defendant, upon said lands was done in a slovenly, unworkmanlike manner and Masters, defendant, failed, neglected and refused to keep a sufficient number of men, machinery and appliances on said job to complete the said work within the period limited by said contract and failed to perform said work with any diligence or promptness at all and failed to use diligence or to endeavor at all to procure a second donkey-engine to be used in said work as required by said contract and permitted a large number of liens for

labor and supplies to be filed against said property and finally, after having partially cleared a portion of said land, abandoned said lands, leaving said lands in such condition that the cost of completing said work called for by said contract was practically equal to what it would have been if Masters, defendant, had done. nothing at all; plaintiff paid to Masters, the defendant, on account of the work done under said contract the sum of $2,971, and further paid to various persons holding liens upon said property for labor performed in the employ of Masters, defendant, in the course of said work the sum of $127.05 and thereafter the further sum on other similar liens of $466.50, together with the sum of $11.25, the cost of preparing said liens, making a total of $3,575.80; the expense incurred by plaintiff in furnishing labor and material to finish clearing and plowing lots 4B, 7B, 8, 10, and 11 in accordance with the terms of said contract in the sum of $3,556.01; it will cost a sum not less than $7,000 to complete the clearing, plowing, leveling, etc., of said lots 1, 2, 3, 4A, 5, 6, 7A, 9 and 12, as provided in said contract, and Masters', defendant's, failure and refusal to perform said contract on his part and his failure and refusal to do and perform the work and labor therein obligated on him has resulted in the plaintiff being damaged in the sum of $8031.80, which sum Masters, defendant, has failed and refused to pay or any part thereof.  Said defendant, C. Masters, cannot, after due diligence, be found in the state of Oregon, although diligent search and inquiry for the purpose of finding said defendant has been made and affiant has been informed by Roscoe Nelson, attorney for the defendant, that said defendant is not now and had not been since the commencement of this action within the State of Oregon, but resides and ever since the commencement of this action has resided and now is in the City of Centralia, State of Washington.  I make this affidavit on behalf of plaintiff for the reason that plaintiff is not now within the State of Oregon.'

"Based upon this affidavit an order was made that the service of summons be made upon Masters, the defendant, by publication. Service accordingly was made by publication pursuant to the order of the Circuit Court and on the twenty-sixth day of April, 1917, the default of the defendant Masters was entered. The summons as published is as follows:

" 'In the Circuit Court of the State of Oregon, for Multnomah County.

" 'William Neilson, Plaintiff,

*v.*

C. Masters, Defendant.

" 'To C. Masters, the Above-named Defendant:

" 'In the name of the State of Oregon, you are hereby required to appear and answer the complaint filed against you in the above-entitled action on or before the sixth day of April, 1917, the said date being six weeks from the first publication of this summons, and if you fail so to appear and answer, or otherwise plead herein, for want thereof the plaintiff will take judgment against you for the sum of $8,031.81, and for his costs and disbursments herein.

" 'This summons is served upon you by publishing same at least once each week for six successive weeks from February 23, 1917, to and inclusive of April 6, 1917, pursuant to an order of the Hon. C. U. Gantenbein, judge of the above-entitled court, which order is dated February 21, 1917.' * *

"On the twelfth day of July, 1917, affidavit was filed by A. H. McCurtain in substance setting out the commencement of this action in July, 1912, the filing of the amended complaint in December, 1916, and that at that time summons was issued, the filing of the affidavit and undertaking for attachment, the writ of attachment, the execution of the writ of attachment by delivering a certified copy thereof to the City of Rainier with a notice attaching all debts, property, money, rights, dues or credits of every nature in its hands belonging or owing to said Masters and requiring said city to furnish a written state-

ment of all such moneys or credits, and that the certificate was returned by the City of Rainier and the writ of attachment to the said Circuit Court on the eighteenth day of January, 1917. The affidavit further sets forth that the said certificate is unsatisfactory to the plaintiff, but the affiant is informed and believes and therefore alleges that on the twenty-seventh day of December, 1916, there was and is now due, owing and unpaid from the City of Rainier to the defendant Masters $9,295.40 with interest and that since the making of said certificate Masters has obtained a judgment in the District Court of the United States for the District of Oregon against the City of Rainier.

"Based upon this affidavit an order was made requiring the City of Rainier to appear before said Circuit Court and answer under oath the matters and things alleged in the affidavit concerning such debts, moneys or other property owing from the City of Rainier to the said Master's, and that the city be required by said order to answer under oath allegations and interrogatories to be served upon it.

"Allegations and interrogatories were prepared and served together with a copy of the order on the seventeenth day of July, 1917, requiring the City of Rainier to appear and answer on the nineteenth day of July, 1917. The City of Rainier did not appear or answer and on the seventeenth day of August, 1917, the City of Rainier was declared in default and a judgment entered against the City of Rainier as garnishee for the sum of $8,031.80 with costs and disbursements.

"Proceedings similar to those taken in the case of *Neilson* v. *Masters* were had in an action brought by the *Title Guaranty & Surety Co.* v. *Masters,* complaint was filed on April 19, 1917, and on the same day an affidavit for attachment and undertaking for attachment were filed and a writ of attachment issued. This writ was served on the City of Rainier on the twenty-first day of April, 1917, and on the same day the City of Rainier

made its return to the effect that it has no property or moneys in its possession or control belonging to the defendant, Charles Masters.   On the twenty-seventh day of April, 1917, an affidavit was filed by John K. Kollock, as attorney for the Title Guaranty & Surety Co., in which he sets out the filing of the complaint in said action, the making and execution and delivery to Title Guaranty & Surety Co. of a certain application for bond and agreement of indemnity wherein and whereby said Masters promised and agreed in consideration of the execution by plaintiff as surety of a bond in the sum of $6,100 that he would hold and keep harmless the plaintiff from and against any and all liabilities, loss, damages, costs, counsel's fees, charges and expenses of whatsoever kind resulting from any action, default or neglect of said Masters that the plaintiff might sustain or incur by reason of having executed said bond and indemnify the plaintiff against any suit or claim brought or instituted against the plaintiff, that the plaintiff executed said bond for $6,100 conditioned upon the faithful performance by Masters of the terms and conditions of the contract of July 20, 1911, between Masters and William Neilson, above mentioned.   The affidavit further alleges the commencement of the action by William Neilson on the twenty-seventh day of July, 1912, the fact that Masters did not defend said action, that the surety did defend the proceedings in said action and the dismissal of the action against the Surety Co.   The affidavit further alleges that the Surety Co. expended in the defense of said cause $2,248.45 and that Masters has failed to repay the plaintiff the said sum or any part thereof.   The affidavit further alleges that Masters is a plaintiff in a certain action pending in the District Court of the United States for the District of Oregon against the City of Rainier, Oregon, that he is not a resident of Oregon and that he is a resident of Glennie, Michigan.

"Based upon this affidavit an order was made for service of the summons upon Masters by publication and the summons was so served. * *

"On the thirteenth day of July, 1917, an affidavit was filed in that cause by John K. Kollock as attorney for the Surety Co., which is in substance the same as the affidavit filed in the case of *Neilson* v. *Masters,* above mentioned, and upon this affidavit a similar order was made, allegations and interrogatories prepared and served on the seventeenth day of July, 1917, requiring the City of Rainier to appear and answer on July 19, 1917, and thereafter similar order of default and judgment was rendered against the City of Rainier as garnishee for the sum of $2,248.45, with costs and disbursements.

"While this action of Neilson was pending against the Title Guaranty & Surety Co. and before it was dismissed against this corporation, on June 27, 1916, Masters sued the city in the United States Court, alleging the proceedings establishing the improvement districts, the contract between the city and Masters and the fact that the city had failed to provide the funds, as was its duty, and sought to recover damages for this neglect on the part of the city in a sum equal to the amount earned under the contract less the amount of warrants issued. A judgment was entered in this action against the city on May 23, 1917, for the sum of thirteen thousand one hundred and eighty dollars ($13,180). Steps were taken to enforce this judgment—first, by tendering the satisfaction of the judgment and demanding warrants afterwards by a *mandamus* suit in the federal court against the officers of the city. The *mandamus* suit resulted in a judgment and the issue of a peremptory writ of *mandamus* on January 3, 1918. From this judgment of *mandamus* the city appealed, and pending the appeal under and pursuant to stipulation between the parties in lieu of an undertaking for a stay of proceedings, deposited with the clerk of the federal court three warrants for the sum of forty-four hundred

twenty-six and 15/100 dollars ($4,426.15); sixty-seven hundred four and 25/100 dollars ($6,704.25) and two thousand forty-nine and 95/100 dollars ($2,049.95) respectively; all 'payable to the order of R. C. Nelson, attorney for Charles Masters.' These warrants were deposited under a stipulation that if the *mandamus* cause should be reversed on appeal the warrants should be delivered to the City of Rainier; if affirmed on appeal the 'warrants should be delivered to R. C. Nelson as attorney for Charles Masters.' Shortly prior to the date on which the indebtedness to the Columbia Contract Company incurred by Masters, Howard and Moody for material furnished for the work would become outlawed, Columbia Contract Company brought suit against Masters, Howard and Moody as partners to recover the amount due for materials furnished for the work, and in said action recovered a judgment against the partnership and against Howard and Moody individually for the amount of the indebtedness with interest, amounting to eighteen thousand six hundred eighty-two and 68/100 dollars ($18,682.68) and costs and disbursements. No service was had in this action on Masters. The interest of Masters and the interest of Howard in the judgment recovered in the action of Masters against the City of Rainier and in the warrants issued pursuant to the writ of *mandamus* was assigned to Moody by Masters and Howard, respectively, for the purpose of paying the indebtedness incurred in the prosecution of the work, subject to the claim of attorneys for compensation for their services. Subsequently and in order to obtain an undertaking on appeal in the former suit brought by the plaintiff, and which was subsequently dismissed, Moody assigned these warrants subject to the claim of the attorneys to Daniel Kern.

"Moody answered the complaint setting up the facts above recited and thereafter upon motion and without contest Bates & Co. and Daniel Kern were allowed to intervene to protect their interests, Daniel Kern having been shown by the answer of Moody to

be the successor in interest of Moody in the warrants, the subject matter of the litigation, and a proper, if not a necessary, party to the litigation, Bates & Co. alleging an assignment by Howard to them of Howard's interest in the contract between Masters and the City of Rainier. Testimony was taken in open court and findings of fact and conclusions of law made and a decree entered in favor of the defendant Moody, and Daniel Kern and Bates & Co. From this decree the plaintiff and the Title Guaranty & Surety Co. have appealed to this court.''

AFFIRMED.

For appellant Neilson there was a brief over the names of *Mr. J. W. Kaste, Messrs. Bauer, Greene & McCurtain,* with an oral argument by *Mr. Kaste.*

For appellant, Title Guaranty & Surety Co., there was an oral argument by *Mr. John K. Kollock.*

For respondent Nelson there was a brief over the name of *Messrs. Dey, Hampson & Nelson.*

For respondent Moody there was a brief over the name of *Mr. Robert C. Wright.*

For respondent Bates there was a brief over the name of *Mr. Harry D. Raffety.*

For respondent Kern there was a brief over the name of *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Wirt L. Minor.*

McBRIDE, J.—This appeal involves the validity of the judgments obtained by plaintiff and the Title Guaranty & Surety Company (which for convenience we hereafter designate as ''the surety company'')

against Masters.  If the judgments obtained through service by publication are valid, the appellants must prevail here.  If they are void, neither plaintiff nor the surety company has through them any standing to contest the claims of the respondents.  The validity of the various claims of defendant Moody and of the intervener representing the estate of L. M. Bates and the intervener Daniel Kern, will be discussed later.  It is to be regretted that consideration of space in the reports renders it impracticable to set forth the contentions of the parties at greater length.

1, 2.  Are the judgments above referred to valid? The attack upon them is collateral, and unless they are wholly and absolutely void, they must be upheld, so far as this proceeding is concerned: *Moore Realty Co.* v. *Carr,* 61 Or. 34 (120 Pac. 742).  It may be premised that a judgment obtained by publication is a proceeding *in rem,* and before a valid order of publication can be made, there must be a seizure by attachment of property of the defendant.  The action must be upon a contract express or implied.  There must be property of the defendant which is subject to attachment and actually attached.  Where either of these requisites is lacking the judgment is absolutely void: *Pennoyer* v. *Neff,* 95 U. S. 714 (24 L. Ed. 565, see, also, Rose's U. S. Notes).

3.  It seems clear that the claim of Masters against the town of Rainier was not of a character subject to attachment.  It was a claim for damages arising out of the negligent failure of the town to levy an assessment to obtain funds wherewith to pay Masters for his work and expenditure incurred in the completion of a street paving contract.  It was an action *ex delicto,* and not *ex contractu: Little* v. *Portland,* 26 Or. 235 (37 Pac. 911).

101 Or.—18

4. Neither was the claim which was the subject of the action brought by the surety company against Masters of such a character that an attachment would lie under Section 296, Or. L.  It was a liability the amount or extent of which was not fixed, but contingent upon the circumstance that litigation might arise in the future and that the surety company might be compelled to incur expense and suffer pecuniarily by reason of such litigation.  It was not a "contract for the direct payment of money": *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132 (74 Pac. 197, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128); *Hurd* v. *McClellan,* 14 Colo. 213 (23 Pac. 792); *Trepagnier* v. *Rose,* 18 App. Div. 393 (46 N. Y. Supp. 397).  This reasoning applied with equal or greater force to the claim of plaintiff Neilson.

These claims being unliquidated, contingent and uncertain in amount, and the action being to recover damages in tort for breach of conditions rather than upon contract, the action cannot be said to be one to recover upon "an actual *bona fide* existing *debt due and owing* from the defendant to the plaintiff."

"The legal acceptation of *debt* is, a sum of money due by certain and express agreement: as, by a bond for a determinate sum; a bill or note, a special bargain; or a rent reserved on a lease; where the quantity is fixed and specific, and does not depend upon any subsequent valuation to settle it": 3 Blackstone, 154.

Schouler considers this definition too narrow, but does not differ from Blackstone in respect to the necessity that the demand be liquidated.  In Section 354 of his work on Personal Property he says:

"A *debt,* as one readily gathers from its Latin derivation, is something owed.  The person to whom

it is owed is the creditor the person owing it is the debtor. 'The legal acceptation of debt is,' says Blackstone, 'a sum of money due by certain and express agreement: as, by a bond for a determinate sum; a bill or note; a special bargain; or a rent reserved on a lease; where the quantity is fixed and specific and does not depend upon any subsequent valuation to settle it.' But perhaps the words 'certain and express' here used are rather too strong; for the creation of a debt may be proved by any circumstances which raise an agreement by implication; and in a less technical sense the word 'debt' may sometimes be popularly used to denote any claim for money, or any kind of a just demand. But we properly use the word 'debt' as denoting in law that money is owed; also that the money is owed by virtue of some agreement or contract between the parties; also that a fixed and specific amount is due, and not something to be ascertained by valuation hereafter.''

The rulings of the courts are as various as the statutes and sometimes divergent in the construction of the same statute. Instead of employing the words of our statute, "an actual existing *bona fide* debt," etc., many statutes read, "all *debts,* dues and demands," or similar comprehensive language is used; and under such statutes attachments even in cases of personal torts have been sustained. It is sometimes difficult to draw the exact line between actions *ex contractu* and actions *ex delicto,* as not infrequently a cause of action will contain some element of both. But in the instant case a discussion of the nature of the actions brought against Masters by plaintiff and the surety company is in fact academic.

Ever since the luminous opinion of Mr. Justice Field was rendered in *Pennoyer* v. *Neff, supra,* the courts of this country have acquiesced in the doctrine that there can be no valid service of summons by pub-

lication, upon a nonresident, without a contemporaneous seizure of his property; that the proceeding is *in rem* against that property; and that a judgment without such seizure is void. This being the case, and being satisfied that there was not and could not have been a valid attachment of Masters' claim for damages against the town of Rainier, further discussion of the nature of the appellants' claims against Masters is rendered unnecessary.

It follows that because at the commencement of the litigation there was no property of Masters which was subject to attachment, the judgments of plaintiff and the surety company are absolutely void, and those parties are in no position to contest the disposition of the fund existing by reason of the judgment of Masters against the town of Rainier.

5. It is further contended on behalf of appellants that even if their judgments are void, they are entitled to the possession of the warrants which are the subject matter of this suit, by reason of an agreement made in writing by Roscoe C. Nelson, attorney for Masters in his suit against the town of Rainier. At the risk of being somewhat tedious we reproduce the letter of Mr. Nelson, which is addressed to Messrs. Norblad & Hesse and Mr. Fred W. Herman, attorneys for the town of Rainier, who were contemplating an appeal from the decision of the United States District Court in the *mandamus* proceeding wherein the town was directed to issue a warrant in favor of Masters for the amount of his judgment, and which decision was later affirmed by the United States Circuit Court of Appeals: *Symons* v. *United States ex rel. Masters,* 252 Fed. 109 (164 C. C. A. 221). The letter follows:

"Gentlemen:

"Confirming my conversation with Mr. Hesse to-day, with regard to matters incident to the judgment in the case of *Masters* v. *City of Rainier* and the *mandamus* proceedings to enforce issuance of a warrant covering said judgment, I beg to state my willingness as attorney for Charles Masters to permit you in lieu of filing a *supersedeas* in connection with your appeal in the *mandamus* case, to cause the recorder and the mayor of the city of Rainier to issue to me as attorney for Charles Masters three (3) warrants covering the sum of said judgments, principal and interest, in the following amounts:

One  warrant  for $4,426.15,
One in the sum of   6,704.25, and
One in the sum of   2,049.95.

"These warrants are to be presented to the treasurer of the City of Rainier and by him endorsed or certified in the customary manner showing the presentation to him and the nonpayment thereof due to lack of funds for such purpose.  The treasurer is thereupon to transmit the said warrant to Mr. Geo. H. Marsh, clerk of the United States District Court for the District of Oregon, to be held by him pending the outcome of the appeal in the *mandamus* case.  In the event of the affirmance of the District Court judgment the said warrants are to be delivered to me, and in the event of the reversal the said warrants are to be returned to the treasurer of the City of Rainier.

"It is further understood that you are to procure from the treasurer of the City of Rainier a letter addressed to me as attorney for Charles Masters certifying that he has made a notation on his official records of the presentation of the said warrants and that the deposit thereof with the clerk of the United States District Court shall in nowise affect their priority of payment over any warrants issued or presented subsequently to the presentation to him of these warrants, in other words, that after the payment by him as treasurer of the City of Rainier of

warrants issued and presented to him prior to the issuance and presentation of these warrants, he will withhold the distribution of funds otherwise applicable to these warrants and will not make any payments out of the general fund of the City of Rainier to any holders of warrants issued subsequently to these warrants.

"I agree in consideration of the foregoing that in the course of your appeal from the *mandamus* judgment I will make no suggestion in or out of the record to the appellate court that the warrants have been actually issued so as to make the judgment of the appellate court a moot one and no advantage shall be taken of this stipulation in that regard.

"I further agree that in the event of the affirmance of said *mandamus* judgment I will not negotiate any of said warrants without the written consent submitted to you of William Neilson or his attorneys, and the Title Guaranty & Trust Co. or its attorneys, but will hold said warrants for the protection of the city of Rainier against liability on certain judgments rendered against it in certain proceedings in the circuit court of the state of Oregon for the county of Multnomah in favor of the said Neilson and the said [Title] Guaranty & Trust Co. until the rights of the said Neilson, Title Guaranty & Trust Co., Charles Masters and other conflicting claims shall have been determined by decree of court or by agreement among the parties.

"I reserve the right, however, by and with the written consent of said Neilson and Title Guaranty & Trust Co. through their respective attorneys, to transfer the said warrants or any of them to A. H. McCurtain or to any other person with the proviso that such individual shall hold same as substitute trustee subject to all of the conditions hereinbefore imposed upon me with regard to the holding and ultimate disposition of the said warrants.

"Yours very truly,

"(Signed) ROSCOE C. NELSON.

"RCN/MW."

6. There is nothing in this letter beyond an agreement on the part of Nelson to act as trustee or stakeholder of the warrants until conflicting claims to them should be settled, and that has been done in this suit. It gave the appellants here no right to the possession of the warrants until all claims against the fund they represented had been adjudicated. If Mr. Nelson had attempted to do more than this, it would have been beyond his authority as attorney for Masters in the proceeding against the town of Rainier: *Kelsay* v. *Taylor,* 56 Or. 13 (107 Pac. 609); Weeks on Attorneys, § 219 et seq.

In view of the invalidity of the judgments of plaintiff and the surety company, neither is in a position to raise the question of the estoppel of Moody and Howard to claim as partners with Masters in the Rainier Street contracts, by reason of their having permitted him to sue in his own name and by reason of diverse citizenship; and a discussion of that question here would be merely academic.

The decree of the Circuit Court is affirmed, and the respondents will recover from plaintiff and the surety company their disbursements on this appeal.

AFFIRMED.

BURNETT, C. J., and JOHNS and HARRIS, JJ., concur.