Submitted on briefs April 28, reversed June 29, objection to cost bill overruled August 30, rehearing denied September 14, motion to recall mandate denied December 20, 1927.

## AUSTIN OSBURN v. MARY H. DeFORCE, ADMINISTRATRIX, ET AL.

### (257 Pac. 685; 258 Pac. 823.)

**Attachment—Refusal to Discharge Attachment in Action Against Resident for Breach of Contract Held Error.**

1. In action against resident of state for breach of contract, court erred in refusing to discharge attachment.

**Frauds, Statute of—Parties to Written Contract Within Statute may not Make New Contract by Oral Modification Agreement.**

2. Parties to written agreement within statute may not make new contract, resting partly in parol, by mere oral agreement, altering one or more terms of written contract, though only in immaterial particulars.

---

2. Modification of contract as within statute of frauds, see notes in 17 A. L. R. 9; 29 A. L. R. 1095. See, also, 2 R. C. L. 708.

Frauds, Statute of—Oral Agreement Releasing Oil Works Manager from Written Guarantee to Secure Offal from Certain Canneries for Three Years Held Within Statute.

3. Oral modification of written contract of employment by releasing business manager of oil works from guarantee to secure offal from two canneries in vicinity of such works for three years, as result of his securing about the same amount from other more distant and less desirable canneries, *held* within statute as new contract not to be performed within year.

Contracts—Oil Works Owner Held to have Waived Manager's Guarantee to Secure Offal from Certain Canneries so Far as Modified Contract Releasing Him Therefrom was Executed.

4. Oil works owner *held* to have waived manager's guarantee in written employment contract, to secure offal from certain nearby canneries by permitting him to proceed on contract as modified by oral agreement, releasing him from such guarantee on procuring offal from more distant and less desirable canneries, in so far as modified agreement was executed.

Accord and Satisfaction—Modified Contract, Releasing Oil Works Manager from Guarantee to Secure Offal from Certain Canneries, Held Accord and Satisfaction.

5. Execution of modified contract, releasing oil works manager from guarantee to secure offal from certain canneries, and its acceptance by owner of works, amounted to accord and satisfaction.

Frauds, Statute of—Oil Works Owner, not Inducing Manager to Seek, nor Benefited by, Oral Contract Releasing Him from Written Guarantee to Secure Offal from Certain Canneries, Held not Estopped to Rely on Statute.

6. Oil works owner, doing nothing to induce manager to seek, and receiving no benefit from, oral modification of written contract to release him from guarantee to secure offal from certain canneries, but merely acquiescing in his continuance as manager for a time, notwithstanding his inability to secure offal therefrom, *held* not estopped to rely on statute.

Estoppel—Party Causing or Preventing Other Party from Strictly Performing Contract cannot Avail Himself of Default.

7. Party causing or preventing other party to contract in force from strictly performing terms thereof will not be permitted to avail himself of such default.

Frauds, Statute of—If One Party's Position is Made Worse by Reliance on Parol Modification of Written Contract, Other cannot Set Up Statute.

8. If position of one party to written contract has been changed for worse in reliance on parol modification, acted on by parties, other party will be denied right to set up statute and stand on original agreement.

7. See 6 R. C. L. 1012.

Frauds, Statute of—Oil Works Owner Held not Prohibited from Relying on Statute to Invalidate Oral Contract Releasing Manager from Written Guarantee to Secure Offal from Certain Canneries, Latter's Situation Being No Worse.

9. Oil works owner *held* not prohibited from relying on statute to invalidate oral contract releasing manager from guarantee in written employment contract to secure offal from certain canneries, except to extent that modified contract was executed and parties' conduct thereunder constituted accord and satisfaction; manager being put in no worse situation by such modification.

Frauds, Statute of—Statute of Frauds is Inapplicable to Executed Contracts.

10. The statute of frauds does not operate on executed contracts.

Pleading—Plaintiff, Alleging in Complaint That He was Discharged After Dissolution of Injunction, cannot Avoid Effect of Injunction Suit as Cause of Discharge by Pleading in Reply and Adducing Evidence of Discharge Before Institution Thereof.

11. Plaintiff, alleging in complaint that he was wrongfully discharged as oil works manager on date of formal notice, after dissolution of injunction against interfering with his management, cannot avoid effect of injunction suit as cause of discharge by pleading in reply and adducing evidence that he was discharged in effect before institution thereof.

Master and Servant—Manager's Discharge Held Effective on Date of Formal Notice.

12. Oil works manager's discharge *held* in effect on date of formal notice thereof, after dissolution of injunction, granted in suit relied on as cause for discharge, against interference with his management.

Master and Servant—Manager's Charges of Incompetency and Neglect, in Suit to Enjoin Employers from Interfering With His Management, Held to Justify His Discharge.

13. Oil works manager's public charges of incompetency and neglect of business by employers, in suit to enjoin them from interfering with his management, *held* to justify his discharge, as matter of law, for lack of fidelity to their business and disloyalty to them.

Master and Servant—Employment Contract Implies Engagement to be Faithful to Employers' Interests.

14. Every contract of employment implies engagement on employee's part to be faithful to his employers' interests and loyal to them.

Master and Servant—Lawfulness of Employee's Discharge is for Court on Undisputed Facts.

15. Where facts are not disputed, and different inferences from facts admitted or proved cannot reasonably be drawn therefrom, question whether discharge of employee was lawful is for court.

10. See 25 R. C. L. 705.

**Master and Servant—Lawfulness of Employee's Discharge is for Jury on Disputed Facts.**

16. If there is any dispute in facts, question whether employee's discharge was lawful must be presented to the jury, with proper instructions.

**Master and Servant—Act Tending to Injure Master's Business, Interests or Reputation Generally Justifies Servant's Dismissal.**

17. Generally, any act of servant which injures, or tends to injure, his master's business, interests or reputation will justify his dismissal.

**Master and Servant—Employers Damages by Manager's Breach of Contract Held for Jury.**

18. Damages to employers by breach of oil works manager's contract by failure to obtain offal from certain canneries near such works *held* for jury.

### ON OBJECTION TO COST BILL.

**Costs—Premium on Appeal Bond Held Proper Item of Taxable "Costs" (Or. L., § 6438, subd. 5).**

19. Under Section 6438, subdivision 5, Or. L., premium on appeal bond in action for damages *held* to be a proper item of taxable "costs."

Appeal and Error, 4 **C. J.,** p. 1123, n. 47.
Contracts, 13 **C. J.,** p. 595, n. 61.
Costs, 15 **C. J.,** p. 278, n. 43, 46.
Frauds, Statute of, 27 **C. J.,** p. 175, n. 67, p. 321, n. 86, p. 327, n. 47, 48, p. 328, n. 49, 50, 55, p. 330, n. 8.
Master and Servant, 39 **C. J.,** p. 81, n. 90, p. 105, n. 2, p. 106, n. 3.

From Clatsop: FRED W. WILSON, Judge.

In Banc.

This is an action for damages resulting from the discharge of plaintiff by Elton C. DeForce, deceased. Plaintiff was manager of the DeForce Oil Works, which was owned by said DeForce. Plaintiff and said Elton C. DeForce entered into a written contract on the twenty-eighth day of June, 1923. By the terms of that contract plaintiff was employed as business manager of the said DeForce Oil Works for a period of three years from the first day of January, 1924, to the first day of January, 1927, at

a flat salary of $3,000, plus a bonus of 10 per cent upon the net profits of said business for each and every year of said term. Said DeForce was first party and plaintiff second party in said contract. It is further provided in said contract that plaintiff should be paid said annual salary "at the end of each calendar year of the said term, and to pay said bonus annually at the end of said calendar year." In consideration of said employment the plaintiff covenanted and agreed "to use his best efforts to operate and conduct said business for the best interests and greatest profit he can for the first party, to give all the time necessary for the proper operation, care and management of said business, to have kept proper books of account which shall at all times be open to the inspection of the first party, and to render to the first party quarterly statements of all receipts and expenditures made by him in the operation of said plant." The contract further provides that plaintiff "guarantees and agrees to obtain from Union Fishermen's Co-operative Packing Co., Sanborn-Cutting Co., Columbia River Packers Association and Booth Fisheries, contracts for the offal from their respective canneries for a period of five years from the expiration of their present contracts and in any event before the commencement of the fishing season following the date of the expiration of said contracts." The contract further provides for the duties respectively of plaintiff and said Elton C. DeForce in the conduct and management of said business. At the time said contract was entered into plaintiff was the administrator of the estate of J. H. DeForce, deceased. At that time the parties contemplated that the estate would be closed and finally settled by the first day of January, 1924, the date on which

plaintiff was to enter upon his duties as manager. The estate of J. H. DeForce, deceased, was not finally settled, however, until March, 1924. Plaintiff entered upon the performance of his contract and continued in such performance until June 29, 1925, when he was discharged by said Elton C. DeForce. Friction had arisen some time prior to that date in consequence of which the said Elton C. DeForce and his wife Mary assumed, against plaintiff's will, control of that part of the business plaintiff undertook to perform. Prior to that time Elton C. DeForce had sold and assigned one-half interest in said oil works to his wife Mary. Elton C. DeForce had inherited said business and property from his father, the said J. H. DeForce, deceased. After Elton and Mary had assumed control of that part of the business undertaken to be performed by plaintiff under said contract, to wit: on June 4, 1925, plaintiff instituted a suit in the Circuit Court in the State of Oregon for Clatsop County against said Elton C. DeForce and Mary H. DeForce, husband and wife, to enjoin them from interfering with his performance of his contract. In his complaint in said suit he alleged that said Elton C. DeForce and Mary H. DeForce, defendants therein, "contrary to the terms of said agreement, have so interfered with plaintiff and his duties under said contract, that he, the said plaintiff, has for several months past and now is unable, by reason of such interference, to perform the duties required of him under said contract, in that defendants have demanded and made plaintiff deliver to them the key to the Post Office lock box, and have received all mail addressed to the said DeForce Oil Works, and have refused to return the same or permit plaintiff to see the said mail and

thus plaintiff has been unable to attend to the correspondence or the many business orders and matters needing immediate attention; * * ." The complaint contained other allegations which will be set out in the opinion.

A temporary injunction was issued by the Circuit Court. This injunction was later dissolved upon a hearing. The sole purpose of that suit was to enjoin the defendants therein from interfering with plaintiff's management of the oil works. After the contract was entered into between plaintiff and said Elton C. DeForce, plaintiff learned that he could not secure a contract for the offal from Union Fishermen's Co-operative Packing Co. and Columbia River Packers Association for a period of five years because the plaintiff's term of management was limited to three years. Thereupon the contract was modified by interlineation, changing the period for which plaintiff undertook to secure the offal from said two last-named canneries from five to three years. Plaintiff was unable to obtain said offal from the said last two named canneries at all and claims that a verbal contract was entered into between him and said Elton C. DeForce whereby the written contract was altered as a result of plaintiff's securing offal from other canneries aggregating about the same amount as the Union Fishermen's Co-operative Packing Co. and Columbia River Packers Association, also by plaintiff waiving claim to the 10 per cent bonus of the profits during the year 1924 and agreeing to do "some other things." One of the issues to be determined on this appeal is the validity of the alleged modification of the original contract by a verbal contract. After the commencement of this suit Elton C. DeForce died. Defendant E. P. Parker was duly

appointed his administrator and after serving several months Mary H. DeForce succeeded him as administratrix of the estate. After filing the complaint in this action plaintiff executed and filed an ordinary affidavit and undertaking for an attachment. The writ was duly issued and the property of the defendant Elton C. DeForce attached. Defendant moved to have the attachment dissolved for the reason that the action was for damages resulting from an alleged breach of contract and that defendant was a resident of the State of Oregon, and for that reason no lawful writ of attachment could issue. The court overruled this contention and thereupon the defendant Parker, then administrator, executed a bond releasing the attachment. The defendant James Bremner was surety on said bond. The assigned errors are:

First, issuing of a writ of attachment and the court's order refusing to dissolve the attachment; second, admission of evidence to support the alleged verbal modification of the written contract between plaintiff and said Elton C. DeForce, defendant, claiming that the original contract was within the statute of frauds and that a modification thereof must be in writing as well as the original contract; third, the conduct of the trial judge in submitting to the jury the question of whether or not the discharge of plaintiff by defendant's decedent was justified. The defendants contend that the institution of the suit to enjoin the DeForces from interfering with plaintiff's management was of itself sufficient justification for plaintiff's discharge. A copy of the complaint in the suit to enjoin the DeForces from interfering with plaintiff's management was attached to the answer in this action and made a part thereof

by appropriate averment. A copy of the complaint in the suit for injunction was also introduced in evidence. It is claimed on this appeal that it was the duty of the court to instruct the jury that the complaint in the suit of equity on its face displayed sufficient lack of loyalty to said Elton C. DeForce, plaintiff's employer, to justify his discharge. Other assignments are based upon instructions given by the court and certain instructions requested by the defendant but refused.        Reversed.

For appellants there was a brief over the names of *Mr. John W. Kaste* and *Mr. Nicholas Jaureguy.*

For respondent there was a brief over the names of *Messrs. G. C. & A. C. Fulton* and *Mr. James L. Hope.*

COSHOW, J.—1. The trial court erred in refusing to discharge the attachment: *Ruby* v. *Whitten,* 117 Or. 271 (243 Pac. 559); *Neilson* v. *Title Guaranty & Surety Co.,* 101 Or. 262 (199 Pac. 948).

2. The principal issue involved in the appeal is the validity of the oral modification of the written contract between plaintiff and Elton C. DeForce. It is not controverted that the contract is within the statute of frauds.

" * * Under the statute of frauds the rule is that parties to a written agreement coming within the provisions of the statute may not, by mere oral agreement, alter one or more of the terms thereof, and thus make a new contract, resting partly in writing and partly in parol. Nor does it matter that the oral agreement affects only particulars of the contract which are not material, provided only it appears that the modification, even though slight, is tantamount to the substitution of a new contract

for the old, and not merely to a waiver of its strict performance. * * " 27 C. J. 327, 328. 1 Williston on Contracts, §§ 593, 594, 599. In *Neppach* v. *Oregon & Cal. R. R. Co.*, 46 Or. 374, 394 (80 Pac. 482, 7 Ann. Cas. 1035), relied on by plaintiff, it is said:

" * * Ever since the decision of Lord Ellenborough in *Cuff* v. *Penn*, 1 Maule & S. 21, holding that a subsequent parol modification of the time of performance specified in a contract within the statute of frauds was valid, there has been much learning exhibited by judges and textwriters in the discussion of such question. The settled doctrine in England now seems to be contrary to that case, and it is now held that an agreement required by the statute of frauds to be in writing cannot be subsequently changed or modified as to the time of performance, or in any other respect, by an oral executory contract: * * The courts in other states, and probably a majority, deny the validity of such an agreement, unless acted upon by the parties, and hold that a part of a contract required by the statute to be in writing cannot rest in parol."

In the cases of *Sherman, Clay & Co.* v. *Buffum & Pendleton*, 91 Or. 352 (179 Pac. 241), and *McDaniels* v. *Harrington*, 80 Or. 628 (157 Pac. 1068), the modification of written leases within the statute was upheld on the ground that the modification was for a period of less than one year and therefore not within the statute. In the case of *McDaniels* v. *Harrington*, above, the modification was also sustained on the further ground that not to do so would permit the use of the statute of frauds to perpetrate fraud. In *Kingsley* v. *Kressly*, 60 Or. 167, 173 (118 Pac. 678, Ann. Cas. 1913E, 746), we find:

"As to the effect of a subsequent parol modification of an agreement of the sale of real estate,
122 Or.—24

the rule is that an agreement, required by the statute of frauds to be in writing, cannot be subsequently changed or modified as to the time of performance by any oral executory contract. * * "

3-5.   To the same purport are *Scott* v. *Hubbard,* 67 Or. 498 (136 Pac. 653), and *Keller* v. *Bley,* 15 Or. 429 (15 Pac. 705).   The subject matter is discussed at great length in notes under *Schaap* v. *Wolf* (173 Wis. 351, 181 N. W. 214), 17 A. L. R., beginning on page 9; also in notes to *Lieberman* v. *Templar Motor Co.* (236 N. Y. 139, 140 N. E. 222), 29 A. L. R., beginning on page 1095.   The modification of the contract in the instant case is within the statute of frauds.   It is a contract not to be performed by its terms within a year.   The modification relied upon by plaintiff was not induced by defendants' intestate, the other party to the contract.   The changes attempted to be made in the contract were made on the solicitation and for the benefit of plaintiff.   Plaintiff was not put in a worse condition thereby.   By the terms of the modification plaintiff was relieved from performing a part of his undertaking.   He was also relieved from his guarantee, a material part of the contract.   He contends that he substituted the offal of other canneries for the Union Fishermen's Co-operative Packing Co., and the Columbia River Packers Association.   But his contract expressly prescribes that plaintiff "does hereby covenant and agree to use his best efforts to operate and conduct said business for the best interests and to the greatest profit he can for the first party (DeForce), to give all the time necessary for the proper operation, care and management of said business, * * ."   Plaintiff guaranteed to obtain from Union Fishermen's Co-operative Packing Co., Sanborn-Cutting Co., Colum-

bia River Packers Association and Booth Fisheries, contracts for the offal from their respective canneries for a period of three years. Plaintiff's obligation required him to secure sufficient offal from the canneries to operate the oil works at a profit. It was his duty to secure the offal from the canneries he claimed to have substituted for Union Fishermen's Co-operative Packing Co. and the Columbia River Packers Association without any modification of his original contract. The plaintiff then did nothing by virtue of the modification of the contract that he was not obligated to do by the original contract. Plaintiff claims that defendants' intestate waived the terms of the original contract by permitting plaintiff to proceed on the contract as modified. In as far as that modified agreement was executed that contention is sustained. The execution of the modified contract and its acceptance by defendants' intestate amounted to an accord and satisfaction. But unless the original contract can be modified by an oral executory contract, plaintiff cannot recover for damages on account of a breach of the modified contract. The modification of the contract releases plaintiff from securing the offal from two of the largest canneries in the vicinity of Astoria where the oil works are located. The canneries substituted are situated across the Columbia River at quite a distance from the oil works. It was a substantial change of the contract which contained the guarantee of the plaintiff to secure the offal from two of the most desirable canneries. The effect of the modification was to make a new contract. The new contract was not to be performed within a year. It was therefore within the statute of frauds and according to all the authorities invalid.

6–8. A large number of the authorities cited and discussed in the briefs of the parties to this appeal permit the modification of a contract within the statute of frauds where not to do so would operate as a fraud upon the party relying upon the modification. This principle is well illustrated in *Neppach v. Oregon & Cal. R. R. Co.,* above. In the instant case the element of fraud is not present. Elton C. DeForce did nothing to induce the plaintiff to seek the modification. He simply acquiesced in plaintiff's continuing as manager for a time, notwithstanding his inability to secure the offal from two of the largest canneries. DeForce received no benefit from the modification. He has done nothing that estops him from claiming the benefit of the statute of frauds. No conduct on his part induced the plaintiff to seek the modification. On the contrary the plaintiff himself sought the modification of the contract and for his sole benefit. There is no element of estoppel to be found in the conduct of Elton C. DeForce.

"Where a party to a contract which is in force causes or prevents another party thereto from strictly performing the terms of the agreement, the former will not be permitted to avail himself of the default which he has thereby occasioned." *Scott* v. *Hubbard,* 67 Or. 498, 505, 506 (136 Pac. 653).

*Cross* v. *Ramdullah,* 274 Fed. 762, cited in the extensive note in 17 A. L. R. 13, 14:

" * * * If the modification made by parol has been acted upon by the parties and the position of one of them has been changed for the worse in reliance on the modification, the other party will be denied the right to set up the statute of frauds and stand on the original agreement." *Rogers* v. *Maloney,* 85 Or. 61, 64 (165 Pac. 357).

9, 10. In the instant case plaintiff was not put in any worse situation by the modification of the original contract. On the contrary he was released from performance in part of his covenants and guaranties. Defendants are, therefore, not prohibited from relying on the statute of frauds, except to the extent that the modified contract has been executed and the conduct of the parties thereunder constitutes an accord and satisfaction. The statutes of frauds does not operate on executed contracts.

11, 12. Defendants predicated error on the court's refusal to instruct the jury in effect that plaintiff's conduct in prosecuting the suit to enjoin the defendants' intestate from interfering with plaintiff's management of the oil works constituted sufficient cause for plaintiff's discharge. Defendants rely especially upon this allegation in plaintiff's suit to enjoin defendants from such interference:

"That said defendants, and both of them, are incapable of adequately or efficiently attending to the affairs and business details of the DeForce Oil Works, and that the various canneries now selling and delivering their offal to the DeForce Oil Works, obtained under said contracts, threaten to and will discontinue such sale and delivery in the event the said defendants continue to interfere with the duties to be performed by the said plaintiff under his said contract, and if the said defendants neglect to properly conduct said oil works and promptly care for all offal to be delivered."

The suit in equity was filed June 4, 1925. Some time prior to that date friction had arisen between the plaintiff and his employers, Elton C. DeForce and Mary H. DeForce. After the injunction was dissolved by the court, to wit: June 29, 1925, the De-

Forces discharged plaintiff. Plaintiff seeks to avoid the effect of his suit in equity as a cause of discharge by pleading in his reply and adducing evidence tending to show that he was in effect discharged prior to the institution of the suit in equity. But plaintiff is bound by the allegation in his complaint. He alleges that he was discharged on the twenty-ninth day of June, 1925. That is the date of the formal discharge. The friction between plaintiff and his employers might have been eliminated if plaintiff had recognized his employers' authority and had not instituted that suit in equity. Plaintiff's discharge took effect on the date of the formal notice: 1 Labatt's Master and Servant, 582, 583.

13. We are of the opinion that plaintiff's charges against his employers, set out in the complaint in the suit for injunction, as a matter of law justified the discharge of plaintiff. For that reason we think the court erred in submitting to the jury the issue as to the right of defendants to discharge plaintiff. Plaintiff breached his contract expressly and impliedly by instituting the suit in equity, publicly charging his employers with incompetency. In his agreement with Elton C. DeForce plaintiff undertook and agreed:

" * * to use his best efforts to operate and conduct said business for the best interests and to the greatest profit he can for the first party, * * ."

In addition to the excerpt set out above from the complaint in equity plaintiff alleged in said complaint:

"That said Defendant Elton C. DeForce had for a number of years just previous to June, 1923, neglected his said business and had so conducted his personal habits and his business affairs to such an

extent that he was unable and unwilling to take upon himself the active management of said plant and reorganize the same for the purpose of securing raw product and profitably selling the same or efficiently conducting said business."

14. The making of this complaint and publishing it to the world as plaintiff did was calculated to injure defendants' business. Plaintiff was the employee of the defendants' intestate and his wife. The charges plaintiff made against them displayed a lack of fidelity to their business and disloyalty to them. Plaintiff had expressly contracted to do his utmost to build up his employers' business. Every contract of employment implies an engagement on the part of the employee to be faithful to his employers' interests and loyal to his employers. The charges made by plaintiff against his employers are the opposite of his implied contract with them.

15–17. Where the facts are not disputed and different inferences from the facts admitted or proved cannot be drawn reasonably therefrom the question of whether or not the discharge of an employee by his employer is lawful is for the court. If there is any dispute in the facts the question must then be presented to the jury with proper instructions.

" * * But many cases have also been decided upon the specific ground that the commission by the servant of any act which produces, or in the natural course of events is likely to produce, such detriment, is itself a breach of duty on his part. On this footing, culpable misconduct has been predicated, where the servant * * had made a wilful and deliberate attempt to injure his master's business, where his acts or words had been such as to injure the master's standing as a business man; * * ." 1 Labatt's Master & Servant (2 ed.), 869.

" * * But, as a general proposition, any act of the servant which injures or has a tendency to injure his master's business, interests, or reputation, will justify his dismissal. * * " 39 C. J., § 79.

"What constitutes a good and sufficient cause for the discharge of a servant is a question of law, and where the facts are undisputed, it is for the court to say whether the discharge was justified. * * " 39 C. J., § 128.

*Von Heyne* v. *Tompkins,* 89 Minn. 77 (93 N. W. 901, 904, 5 L. R. A. (N. S.) 524); *Peniston* v. *Huber Co.,* 196 Pa. 580 (46 Atl. 934); *Kendall* v. *West,* 196 Ill. 221 (63 N. E. 683, 89 Am. St. Rep. 317).

18. Defendants contend that this court should determine the issues joined regarding defendants' counterclaim. The counterclaim is for damages sustained by defendants for breach of the contract by plaintiff. We believe that a jury is better qualified to assess such damages, if any, than is this court. For that reason we decline to determine the question on the evidence brought here. It is not necessary to determine or discuss the other assignments of error.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

Objection to cost bill denied August 30, 1927.

ON OBJECTION TO COST BILL.

(258 Pac. 823.)

For the objection, *Messrs. G. C. & A. C. Fulton* and *Mr. James L. Hope.*

*Contra, Mr. John W. Kaste* and *Mr. Nicholas Jaureguy.*

COSHOW, J.—19. This cause is before us on objection to appellants' cost bill. Objection is made to one item only, to wit: "Premium on appeal bond $40." The objection is based on the ground that the item objected to is not a proper item of taxable cost as against the respondent. The objection is not to the particular amount but to the item as a whole. The objection is not well taken.

" * * in all actions and proceedings a party entitled to recover disbursements therein shall be allowed and may tax and recover such sum paid a person or company for executing any bond, recognizance, undertaking, stipulation, or other obligation therein, not exceeding, however, one per cent on the amount of such bond, * * during each year the same has been in force." Or. L., § 6438, subd. 5.

The objection to the cost bill is for that reason denied and the cost bill as filed by appellants is allowed.

OBJECTION TO COST BILL DENIED. REHEARING DENIED.