Argued September 9, affirmed November 5, 1971

THOMPSON, *Respondent, v.* BURR, *Appellant.*

490 P2d 157

*A. C. Walsh, Jr.,* Coquille, and *Thomas Y. Higashi,* Gold Beach, argued the cause for appellant. On the brief were Berg, Berg & Walsh, Coquille, and Starkweather & Higashi, Gold Beach.

*Harry A. Slack,* Coquille, argued the cause for respondent. On the brief were Slack & Slack, Coquille.

TONGUE, J.

This is an action by a discharged employee against his former employer for payment of a bonus of $749.80, which his employer, after discharging the employee, refused to pay. Defendant appeals from a judgment in that amount, with interest and attorney fees, after trial before the court, without a jury.

Defendant contends that he did not "legally obligate" himself to pay the bonus, but that it was a "mere expectation" which was "payable at the choice of the employer," so as not to become a "contractually binding bonus agreement."

According to testimony offered by plaintiff, by which this court is bound on appeal in such a case, at the time of his employment in 1966 plaintiff was told by defendant that employees who were on the payroll on December 31st of each year would be paid a bonus

in the amount of ten per cent of their gross earnings for the previous calendar year, payable in April of the following year, but that nothing was said about any further requirement of continued employment until April 1st of the following year in order to qualify for payment of the bonus. Plaintiff was paid such a bonus for his work during 1966 and 1967.

At some time prior to January 28, 1968, another discharged employee filed an action for payment of his bonus. In that action defendant apparently took the position that because that employee was not still employed on April 1st he was not entitled to payment of the bonus, while that employee apparently contended that the bonus was payable if he was still employed on December 31st, regardless of whether he was still employed on the following April 1st.

Defendant testified that in order to "clarify" this "misunderstanding," he had his attorney prepare a written statement of the bonus arrangement, which he then took around to his employees, including plaintiff, to sign as their "understanding" of the bonus arrangement. That document stated specifically the understanding that "if an employee is on the payroll as of April 1st of any year, then he will be considered for a bonus based on his wages earned in the previous calendar year," but that defendant "is under no obligation to make the payments unless we are actually employed by him on April 1st of any year."

The action filed by the other employee was not set for trial until March 11, 1969. Meanwhile, plaintiff continued in employment through December 31, 1968. On the day before that case was to be tried defendant asked plaintiff to attend a conference at the office of defendant's attorney to "talk over the testi-

mony" for that trial and to "find out" how plaintiff was going to testify.

Defendant testified that then, and for the first time, he learned that plaintiff also "misunderstood" the bonus arrangement—apparently to the effect that the only condition for payment of the bonus was employment as of December 31st. Defendant then apparently settled that lawsuit and on March 12, 1969, discharged plaintiff, refusing his specific request to be permitted to work for the remainder of the month and until April 1, 1969. In response to plaintiff's application for unemployment compensation defendant stated that "claimant misrepresented the truth" concerning the bonus system and "cost them $1,500" and that his "attitude was detrimental to their best interest."

Defendant admitted that this was "one of the reasons" why he discharged plaintiff and that plaintiff's work had been satisfactory. He also testified that the reason he fired plaintiff was that plaintiff, as his "dispatcher" and the man "in charge" when he was not around, disagreed with him on the previous discharge of two other employees and said that he did not think that defendant was "fair" to his employees.[①]

After hearing the testimony of both plaintiff and defendant the trial judge, in an oral opinion at the end of the trial, held that under this testimony defendant had no "good cause" for discharging plaintiff. He also held that:

"The Court is satisfied what really precipitated

---

[①] Defendant also complained that several months previously plaintiff had said that he could do better working for another employer (after which defendant gave him a raise) and that plaintiff once said that it would be "nice" if he did not have to work more than eight hours per day, which was "not possible" in that business. Defendant's only other complaint was that plaintiff had a "back ailment."

this thing and caused the man to be fired was the fact that there was a disagreement on what the testimony ought to be in the other case. If it hadn't been for that, this man would probably have not been fired at that time and would have been permitted to continue to April 1st where [sic] he would have been able to get his bonus.[⊛]

"Now, unless the employer has good cause * * * the fact that the employer can let an employee go at any time doesn't mean that he can make this kind of an agreement and then when it's about ready to ripen, without good cause, can let the man go and still maintain the benefits of the employment bargain which he made with him. So in this case the plaintiff will be entitled to recover the amount of the bonus."

■ We agree with the trial judge. We also reject defendant's contention that he did not "legally obligate" himself to pay the bonus, but that it was a "mere expectation" which was "payable at the choice of the employer."

The written statement of the bonus plan, as prepared by defendant's attorney, stated that the bonus was offered to employees as "an incentive to stay on the job." That offer became binding as a unilateral contract upon acceptance by plaintiff by staying on the job for the entire calendar year of 1968 and until the date of his discharge in March 1969. It is clear that plaintiff also would have "stayed on the job" until April 1, 1969, but for his discharge less than three weeks before that date.

In addition, the very wording of the written statement of the bonus plan, as prepared by defendant's attorney, that defendant is "under no obligation"

[⊛] Cf. ORS 652.220 (3).

to pay a bonus to an employee unless "actually employed by him on April 1st of any year," carries the clear inference that defendant *was* under obligation to pay a bonus to employees who had been employed during the preceding calendar year and continued to be employed on April 1st of the subsequent year.

These terms of the written statement show an intent that the bonus payments were not a mere "gratuity," to be paid to qualified employees, or withheld from them, at defendant's whim or caprice, but that it was an offer to make a bonus payment to any employee who "stayed on the job" and qualified for such payments, so as to become a binding unilateral contract upon such an acceptance by such an employee and in consideration of his continued employment.[9]

■ We also reject defendant's contention that the finding by the trial court that there was no "just cause" for discharge is not sufficient to entitle plaintiff to payment of the bonus, in the absence of a finding that defendant also acted in bad faith.

There is ample authority to the effect that where the payment of a bonus is a matter of contract (as in this case), rather than a gratuity, such an agreement by an employer to pay a bonus to an employee may not be defeated by the employer by discharging

---

[9] Cf. Harryman v. Roseburg Fire Dist., 244 Or 631, 634, 420 P2d 51 (1966), and State ex rel Nilsen v. The Oregon State Motor Assn., 248 Or 133, 136, 432 P2d 512 (1967).

See also Annot, 81 ALR2d 1066, 1070 (1962), and cases cited therein.

Defendant says that *Harryman* and *Nilsen* recognize that "it is possible to also create a gratuitous fringe benefit which can be cancelled by the employer." While such a bonus plan may be "possible," we hold that under the facts of this case the payment of a bonus to employees who "stayed on the job" and qualified for bonus payments was not a "gratuity," but was a matter of contract.

the employee shortly before he has completed his eligibility for the bonus unless the discharge was for "good cause" and that if such an employee is discharged "without good cause" he is still entitled to payment of the bonus even if the employer did not act in bad faith.[4]

Cases cited by defendant are either not in point on their facts or represent what we consider to be an unsound rule, and contrary to the foregoing cases and authorities.[5]

Finally, as held by this court in *Osburn v. De-Force,* 122 Or 360, 376, 257 P 685 (1927):

> "What constitutes a good and sufficient cause * * * for the discharge of a servant is a question of law, and where the facts are undisputed, it is for the court to say whether the discharge was justified. * * * ."

In this case there was ample evidence to support the finding by the trial judge, sitting without a jury, that defendant did not have "good and sufficient cause" for the discharge of plaintiff.

Affirmed.

---

[4] Coleman v. Graybar Elec. Co., 195 F2d 374, 377 (5th Cir 1952); Roberts v. Mays Mills, 184 NC 406, 114 SE 530, 28 ALR 338 (1922); Marvin Turner Engineers v. Allen, 326 SW2d 200 (Tex Civ App 1959); The Parish & Brigham Corporation v. Jackson, 16 Oh App 51 (1921); Meyers v. Roger J. Sullivan Co., 166 Mich 193, 131 NW 521 (1911); and Haag v. Rogers, 9 Ga App 650, 72 SE 46 (1911). See also Annot, 28 ALR 346, 347 (1924); Annot, 81 ALR2d 1066, 1080 (1962); Note, Legal Problems of Private Pension Plans, 70 Harv L Rev 490, 497 (1957). In addition, see Restatement, Law of Contracts 438, § 295, and 1 Williston, Contracts 544, § 130B (3d ed).

[5] Defendant's authorities on this point are: Russel v. H. W. Manville, 53 Cal App 572, 200 P 668, 670 (1921); Cains Coffee Co. v. McNutt, Okla, 308 P2d 651, 653 (1957), and Molburg v. Hunter Hosiery, Inc., 102 NH 422, 158 A2d 288 (1960). Defendant also cites Osburn v. DeForce, 122 Or 360, 257 P 685, 258 P 823 (1927), which clearly does not support defendant's position.