Argued and submitted February 13, reversed in part
and remanded May 18, 1981

## ROYAL INDUSTRIES, INC., dba Peerless Division, Royal Industries, *Respondent,*

*v.*

## HARRIS et al, *Appellants.*

## (No. L79-1091, CA 18556)

628 P2d 418

James A. Arneson, Roseburg, argued the cause and filed the briefs for appellants.

S. Ward Greene, Portland, argued the cause for respondent. With him on the brief was McMenamin, Joseph, Herrell & Babener, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this action for breach of a retail installment contract brought to recover a deficiency judgment and attorney fees, the trial court denied defendant Bullock's motion for summary judgment and granted plaintiff's motion for summary judgment against both defendants. Thereafter the court entered judgment against both defendants jointly and severally. Bullock appeals and seeks to reverse the summary judgment as to him; both defendants seek to reverse the court's award of attorney fees to plaintiff.

In the first assignment of error, Bullock contends that summary judgment was improperly granted as to him because: (a) there was a genuine issue of material fact as to the intent of the parties, and (b) the contract should not be interpreted to impose liability on Bullock in excess of the primary obligation, which had already been discharged. In the second assignment of error, defendants contend that the award of attorney fees was improper because there was no sworn evidence before the trial court, the amount of fees sought had been limited by the complaint, and the amount awarded was not reasonable.

The following facts appear from the affidavits filed with the motions for summary judgment. On April 25, 1977, plaintiff and defendants Bullock and Harris signed an agreement relating to the purchase of a semitrailer. Plaintiff was the seller and Harris was the buyer. The status of Bullock is contested. Opposite Bullock's name on the written contract, a printed standard form completed by plaintiff, the word "Buyer" was typed over with "x's" and the word "Co-signer" typed above it. According to Bullock's and Harris' affidavits, Bullock's intention in co-signing was to be obligated only for the original purchase price. Plaintiff's agent, who supervised the closing of the transaction, however, stated in her affidavit that she understood that Bullock was to be fully and co-extensively liable for all amounts chargeable to a "buyer" under the agreement, although she did not say that understanding was communicated to Bullock at the time. Bullock did not sign a separate portion of the form designed for guarantors, the terms of which would have expressly made him liable for all amounts chargeable under the contract to a "buyer."

In September, 1977, an extension of time was arranged on the contract. Both Harris and Bullock signed the extension agreement. On that occasion the parties were denominated as "purchaser" and "co-maker," the terms printed on a standard "Extension-Revision Agreement" form. In 1978, the trailer was involved in an accident and suffered substantial damage. The trailer was repaired by plaintiff and returned to Harris. The charge for the repair, in excess of $10,000, was added to the balance owing on the original contract. There is no evidence that Bullock was ever advised of the repair or that he agreed to it.

Subsequently, Harris defaulted on the contract payments, and plaintiff repossessed the trailer and sold it. In this action, plaintiff seeks to hold both Harris and Bullock jointly and severally liable for the deficiency between the amount received in the sale and the sum of the repair charge and the remaining contract balance. Bullock resists liability for the repair charge and claims to have no liability for the deficiency judgment, on the theory that the primary obligation was discharged by receipt of the proceeds of the sale.

At the time the trial court entered judgment for plaintiff against Harris and Bullock, it awarded plaintiff a judgment for attorney fees in the amount of $2,500. Plaintiff's complaint prayed for attorney fees in the amount of $2,000 "or such other amount as the Court determines to be reasonable." At the time the court entered its judgment on July 11, 1980, it had before it only the affidavit of plaintiff's credit manager representing that plaintiff had agreed to pay its attorneys prosecuting this action 25 percent of any amount recovered in the lawsuit, and also an unsworn letter from plaintiff's attorney stating that his contingent fee totalling $2,987.50 was a reasonable amount. After defendants objected to the award of attorney fees, plaintiff on July 28, 1980 (after the judgment had been entered) submitted its cost bill and an affidavit from its attorney in support of the attorney fee award.

■ ■ Plaintiff characterizes Bullock as a surety, and we agree. In *Chada v. Tapp,* 277 Or 3, 6, 558 P2d 1225 (1977), the definitions of surety from the Restatement of the Law of Security and from Simpson on Suretyship are quoted:

"The surety is the person who is bound on an obligation from which another, by the discharge of a duty, should relieve him." Restatement, § 2, 229 (1941).

"A surety, in the broad sense, is one who is liable for the debt or obligation of another, whether primarily or secondarily, conditionally or unconditionally. * * *" Simpson, Suretyship, 6 (1950).

It appears from the affidavits that Bullock was lending his credit to Harris to enable Harris to purchase the semi-trailer. Parol evidence may be introduced "to show that a party who appears ostensibly as an absolute co-obligor was actually intended to be only a surety on the promise when the parties to the contract know that one of them executed the instrument in that capacity." *Cottage Grove Lbr. Co. v. Lillegren,* 227 Or 24, 30, 360 P2d 927 (1961). The precise label, however, does not resolve the underlying issue in this case—the scope of Bullock's liability. As noted in the Restatement of the Law of Security, § 88, 253 (1941):

"Problems of interpretation of contracts of a surety which are often of importance include those relating to the scope of the surety's promise. It is frequently of considerable difficulty to determine whether the principal's credit has been guaranteed for a particular purpose, for a particular time, for a single transaction or a series of transactions, for a particular or an indefinite amount, for a particular amount as a total credit or as a revolving credit, or for transactions having described characteristics, as for the price of goods, when accompanied by bills of lading representing certain shipments."

The following provisions of the contract are relevant:

"1.6  At its option, Seller may discharge taxes, liens, security interests or other encumbrances upon the goods and may incur expense for maintenance and preservation of the goods. The rights granted by the preceding sentence are not a waiver of any other rights of Seller arising from breach by Buyer of any covenant or agreement contained in this contract.
"* * * * *

"1.11  If Seller shall make any payments or incur any expenses in accordance with 1.2 (exclusive of payments for insurance premiums which are included in the Total of Payments) 1.6 or 1.7, Buyer will, upon demand, reimburse Seller for the amount of such payments or expenses with

interest at the rate of 10 percent per annum from the date the same are paid or incurred to the date of payment. All such amounts shall, until paid by Buyer, be added to and become part of the obligations secured hereby.

"1.12 If more than one person signs this contract as Buyer, wherever the word 'Buyer' is used herein it shall mean all such signers. In such event, the obligations of all such signers to pay Total of Payments and all other accounts which Buyer is required hereunder to pay and perform and each and every covenant and agreement by Buyer herein shall be joint and several."

The contract here is ambiguous on its face. The agreement expressly provides that a person who signs "as Buyer" is liable under the contract. Bullock effected a change in the contract so that he was signing not "as Buyer" but "as Co-signer." Obviously, the parties intended that Bullock be liable for something, but it seems equally obvious that Bullock did not intend to sign or obligate himself "as Buyer." There is an ambiguity as to the intent of the parties concerning the scope of Bullock's liability as a surety.

■ In interpreting contracts of suretyship, ordinary rules of interpretation are to be applied. *Union Oil Co. of Calif. v. Lull,* 220 Or 412, 425-26, 349 P2d 243 (1960). In *Western Bank v. Youngs,* 274 Or 213, 218, 545 P2d 886 (1976), the Supreme Court found ambiguity in a written agreement as to the scope of a guarantor's liability, and it determined the meaning by looking to the true intention of the parties as expressed in the testimony. That case, however, did not involve a summary judgment.

■■ In this case, although the affidavits shed light on the separate intentions of the parties, they raise a factual issue as to the intent of the parties (in the sense of a "meeting of the minds") concerning the scope of Bullock's liability. In order to have entered a final judgment, the trial court either had to conclude as a matter of law that Bullock was liable, notwithstanding his intent in changing his status when he signed, or had to resolve that genuine issue of material fact, which is not permissible on a motion for summary judgment. *Credithrift v. Novak,* 44 Or App 483, 488, 605 P2d 1380 (1980). When it appears that such an issue exists, the motion must be denied. Furthermore,

while the record does not reflect any agreement among the parties, if a controverted and material question of fact exists in the record, as here, the parties may not agree that the court can decide the case by summary judgment without determining the factual issue. *Hanneman v. Jones,* 45 Or App 1005, 1009, 609 P2d 912 (1980). We cannot say as a matter of law that plaintiff was entitled to judgment. ORCP 47C. We therefore conclude that summary judgment should not have been entered against Bullock.

■ Because our disposition of the first assignment of error leaves intact the award of attorney fees against Harris, we reach the second assigned error. Defendants did not stipulate that attorney fees could be awarded without the presentation of evidence. As in *Reeder v. Kay,* 282 Or 191, 196, 577 P2d 925 (1978), plaintiff's attorney here did not put in any formal evidence of the extent of his services or their reasonable value, prior to entry of judgment. Advice to the court of a contingent fee arrangement did not establish the reasonableness of attorney fees Harris should be required to pay. The affidavit which finally did arrive came too late. ORS 20.210. The award of attorney fees was improper.

Reversed in part and remanded.