Argued and submitted January 18, affirmed April 26, 1982

# DETRICK,
*Respondent,*

*v.*

# RANCH WHOLESALE SUPPLY
# OF REDMOND, INC.,
*Appellant.*

## (No. 22485, CA A20314)

643 P2d 1293

Robert S. Lovlien, Bend, argued the cause for appellants. With him on the briefs were Gray, Fancher, Holmes & Hurley, Bend.

Ronald L. Marceau, Bend, argued the cause and filed the brief for respondent. With him on the brief was Johnson, Marceau, Karnopp & Petersen, Bend.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff sued suit for an accounting and payment of a bonus allegedly due him under an oral employment contract as manager of defendant's general store. The trial court entered a decree in favor of plaintiff in an amount based on a bonus of 10 percent of the net profits of defendant after adding back the salaries of the directors, bonuses previously received by plaintiff, income taxes paid by the corporation and other adjustments for inventory and aircraft expenses for the years 1971 through July 14, 1976.

Defendant employer appeals, asserting that the trial court erred

(1) in recomputing "net profit" on which plaintiff's bonus was to be computed; and

(2) in awarding plaintiff a bonus for any part of the calendar year 1976 "since plaintiff was discharged by defendant prior to the end of the fiscal year in 1976."

Plaintiff commenced working for defendant as its store manager in December, 1968. He was discharged on July 14, 1976. Plaintiff's starting salary was $800 per month, plus a bonus of 10 percent of the net profits of the corporation. The central dispute is as to the proper method of determining net profits of the defendant corporation under the bonus agreement. Plaintiff contended that he was entitled to a bonus of 10 percent of the net profits, without deducting salaries and bonuses paid to the officers and directors and before taxes.[1] Defendant contended that plaintiff's bonus was to be 10 percent of the net profits of the corporation, less income taxes paid, but including compensation received by the officers and directors and also the bonuses already received by plaintiff.

The trial court appointed a referee for the purposes of determining (1) the net profit of defendant for the period in question, (2) compensation, including bonuses paid by

---

[1] Although defendant in its brief advances a contention based on conflicting testimony by plaintiff in a deposition (not part of the record) that the bonus was to be computed from the net profit *after* taxes, defendant's president testified that the bonus agreement provided plaintiff would receive 10 percent of the net profits determined after adding back amounts previously deducted for officers' and director's salaries, compensation and *taxes*.

defendant to its officers and directors during the period, (3) income taxes incurred during the period and (4) bonuses paid plaintiff during the period.

After reviewing the referee's report the trial court accepted and approved it and rendered its decree, awarding plaintiff a bonus of 10 percent of the net profits after adding back the salaries (and bonuses) of the officers and directors and the income taxes paid by the corporation for the years 1971 through July 14, 1976. In addition, the court allowed an adjustment in favor of plaintiff for an inventory shortage in the amount of $58,377, added back bonuses paid to plaintiff to be included in the total net profits and deducted $15,927 airplane expense before computing plaintiff's bonus.

The thrust of defendant's first assignment, as we understand it, is that the trial court was not authorized to reject the method of determining net profits employed by defendant's accountant and substitute the method employed by the referee, in the absence of a showing of fraud, bad faith or palpable error. Defendant cites *Smith v. Peninsula House, Inc.,* 65 NJ Super 341, 167 A2d 807 (1961), as authority for this contention.

■ *Smith* involved a bonus agreement that entitled the plaintiff to one-half of any net profit " 'as determined by the corporation's independent auditors * * * whose determination of net profits shall be conclusive.' " 65 NJ Super 345. The trial court ignored the auditor's determination that there were no net profits and allowed the plaintiff a bonus. The appellate court held that the auditor's determination was binding by the terms of the parties' agreement. The court went on to say:

"* * * This does not mean that the determination of the auditors is conclusive in the sense that it is not subject to judicial review. It merely means that their decision will be upheld in the absence of bad faith or an unreasonable departure from approved accounting practices. * * * " 65 NJ Super at 348.

The rule in *Smith* is not controlling in this case, because the bonus agreement here did not provide that the determination of net profits by the corporation's accountant was conclusive.

■ The difference between the parties' final figures resulted essentially from the treatment accorded the disputed inventory items. Defendant claimed that the inventory errors should be accounted for in the years they were discovered and that the same were held by defendant as a reserve for obsolescence; the referee said that the proper method was to account for any error in the year that it occurred, which he stated was the usual and customary accounting practice. Defendant's accountant defended the defendant's practice, pointing out that it had been acceptable to the IRS. The trial court agreed with the referee. We find nothing in this record that persuades us to the contrary. In the absence of a clear showing of intent to the contrary, the inventory adjustment should be based on the usual and accepted accounting practices. We conclude that the practice for income tax purposes, including its acceptance or nonacceptance by the IRS, is not necessarily controlling here. *See Harvey v. Missouri Valley Electric Co.,* 268 SW2d 820, 49 ALR2d 1124 (Mo 1954).

Lastly, we consider defendant's assignment that plaintiff was not entitled to a *pro rata* bonus for the period he worked in 1976 before he was discharged. It has been held in a number of jurisdictions, including Oregon, that where an offer sufficiently definite to permit ascertainment of its terms has been made by an employer to an employe promising a share of the employer's net profits, an enforceable contract is created between the parties, providing the employe accepts by continuing his employment. *See Thompson v. Burr,* 260 Or 329, 490 P2d 157 (1971), and authorities cited therein. The cases seem to turn on the wording of the particular agreement. In *Thompson v. Burr, supra,* the court allowed the employe to collect his bonus based on wages earned in the previous calendar year, notwithstanding the claim of the employer that the bonus was a mere expectation payable at the choice of the employer and notwithstanding that the employe had been discharged without just cause three weeks before he would become entitled to it. Defendant cites as authority for its contention three cases discussed in an annotation. 49 ALR2d 1155. (A fourth case appears in the supplemental annotations.) Two of those cases indicate that, if an employe is terminated prior to the end of the year, he is

not entitled to a percentage of the profits for a fractional year. In two of the cases, however, the court allowed compensation for the partial year.

■ It is not disputed that the agreement here was for a yearly bonus and contemplated that the employe would serve his employer for the full year. Obviously, the amount owing, if any, could not be determined until the end of the fiscal year. The bonus was part of the employe's agreed compensation just as much as his monthly salary. Under all the circumstances we are persuaded that the most logical and equitable rule in this case should be that, in the absence of a showing of a contrary intention of the parties, the employe is entitled to a bonus for the portion of the year he worked before his discharge. *Cf. North Pacific Lbr. v. Moore,* 275 Or 359, 551 P2d 431 (1976) (where the court held, *inter alia,* that under the evidence presented, the arrangement between the employer and employe was that no bonus would be paid unless the employe stayed for the entire year).

Affirmed.