STATE ex rel ROBERTS,
*Appellant,*

*v.*

PUBLIC FINANCE CO.,
*Respondent.*

(16-81-03230; CA A21878)

651 P2d 728

William F. Gary, Solicitor General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and Richard David Wasserman, Assistant Attorney General, Salem.

Jonathan M. Hoffman, Portland, argued the cause for respondent. With him on the brief was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

The state brought this action against Public Finance Company to collect unpaid vacation pay allegedly owed its ·assignor, Richard G. Hoglen, pursuant to ORS 652.310 to 652.405. The state also seeks the statutory civil penalty provided in ORS 652.150, together with costs and attorney fees.

Both parties moved for summary judgment. The trial court denied the state's motion, granted defendant's motion and entered a judgment for defendant dismissing the complaint with prejudice and awarding costs. The state appeals, contending that its motion for summary judgment should have been granted.

The narrow issue, as phrased by the state, is:

"When an employe employed under a unilateral contract is contractually entitled to receive three weeks paid vacation for each year worked, which he is eligible to take on and after each anniversary date of his original employment, is the employer liable for compensation in lieu of vacation when it discharges the employe without "cause" before the annual anniversary date?"

The entire thrust of the state's argument is that the employer, as a matter of unilateral contract law, could not sell its business in good faith, resulting in the employe's being terminated before he was entitled to a vacation, without paying the employe vacation pay for the time he worked during the year before his annual anniversary (vacation eligibility) date.

The relevant conditions of employment provide:

"557.   *VACATION*

"557.1   *Eligibility* —Permanent full-time employees are eligible for vacation based on length of continuous service. Eligibility is contingent upon such service being performed in strict compliance with all Company rules and policies. Except at completion of the first six months of employment, vacation entitlement is established on the employee's anniversary date with the Company. Anniversary date means Month and Day employed.

"544.   *VACATION ENTITLEMENT ON TERMINATION*

"544.2   *Dismissal and Release*

"544.21 An employee who is released or dismissed for reasons other than cause as explained in 543.11 with vacation time earned but not yet taken, will be paid for that time.

"544.3 *Resignation*

"544.31 If an employee resigns with vacation time earned but not yet taken, he/she will be paid for that time, provided proper notice of intent to resign is given as explained in 543.43."

The operative language of §§ 544.21 and 544.31 is identical. Yet the state concedes that the employe would not be entitled to vacation pay if he resigned (§ 544.31) prior to his anniversary date (§ 557.1), because "such a resignation would constitute a rejection of the offer for paid vacation, and would disqualify the employe from the benefits under the vacation plan." However, it urges that the situation is different if the employe is terminated in good faith, but without cause, not because the contract language is different, but because the "offer of paid vacation was an offer for a unilateral contract." That offer, it argues, was accepted here by the employe's tendering of part performance.

There is no doubt that the paid vacation plan was part of the employment contract. However, as in *Rose City Transit v. City of Portland,* 271 Or 588, 533 P2d 339 (1975), only those employes who were eligible for the benefits at the time of termination are entitled to them. Labelling the vacation plan provisions an "offer of a unilateral contract" does not change the result. In the *Rose City* case, the Supreme Court apparently treated the pension plan as an offer of a unilateral contract, yet held that only those employes who were eligible under the plan at the time they were terminated were entitled to benefits. *See Rose City Transit v. City of Portland,* 18 Or App 369, 525 P2d 1325, *aff'd as modified,* 271 Or 588, 533 P2d 339 (1975).

Given that there is no contention that the contract conditions of employment are ambiguous or that the employer acted in bad faith, and given the concession that an employe must be employed on his anniversary date in order to be entitled to a paid vacation, we agree with the trial court's conclusion that the employe here did not fulfill that condition.

The dissent would generate an issue of fact not raised below or here. Not only did both parties argue that there was no issue of material fact, but the affidavits each party submitted in support of its motion for summary judgment do not even suggest an issue of fact, although the facts are set forth fully. There is no assertion by Hoglen that he understood or interpreted the employment agreement to mean that he was entitled to *pro rata* vacation pay on termination without cause. He stated that "under the terms of that agreement I was entitled to three weeks of paid vacation a year." That fact is not disputed. Neither was there any contention in the trial court that the contract was ambiguous.

The state's theory was, and is, that under the law of unilateral contracts, the employe is entitled to *pro rata* vacation pay on termination without cause. That is the only question we decide — one of law — and the only one presented to both courts. In *Hanneman v. Jones,* 45 Or App 1005, 609 P2d 912 (1980), both parties presupposed that the document was ambiguous and that the intent of the parties must be ascertained from extrinsic evidence. Here, the parties presuppose no ambiguity and do not rely on extrinsic evidence. In *Detrick v. Ranch Wholesale Supply of Redmond,* 57 Or App 28, 643 P2d 1293 (1982), involving an oral employment agreement, which included a bonus plan, we held that the employe's rights depended on the parties' intent. That issue is not involved here.

The dissent would require the parties to develop an issue of material fact, apparently on the issue of the parties' intent or the employe's expectation, to be resolved by extrinsic evidence. It is the function of affidavits in support of, or in opposition to, a motion for summary judgment to raise those issues. The affidavits did not do so here. It is apparent from the state's contentions that it does not consider those issues to be relevant here, because the law of unilateral contracts requires that it prevail. The dissent does not accept that contention, although there is language in that opinion which suggests that it does. 59 Or App at 240.)

If we were to decide this case on a ground not presented either in the trial court or here, the dissent still

misses the mark. Here the employment contract consists of written policies adopted by the employer. To say that the *employe's* intent as to the meaning of any policy is relevant makes no sense at all — neither the employe nor anyone on his behalf played any part in drafting the policy language. It was not a negotiated contract.

Accordingly, if we were to go off on a ground not argued by the state and, therefore, not countered by defendant, the most viable theory would be that the employment contract was one of adhesion, and any ambiguity should then be resolved against the employer, who prepared it. Because defendant has not had an opportunity to meet that theory in either the trial court or here, we ought not to dispose of this case[1] on that basis.

Affirmed.

**ROSSMAN, J.,** dissenting.

I respectfully dissent, because the majority in effect approves the use of summary judgment as a proper way to resolve ambiguities in contracts. That is not a proper function of summary judgment.

The majority opinion slights the facts. To analyze this case properly, the following facts must be considered.

Hoglen had worked for defendant for just three days short of 19 years (November 24, 1961, through November 21, 1980), when another finance company took over 131 Pacific Finance offices, including Hoglen's, at which time defendant terminated him. Before his termination, Hoglen had intended to continue his employment with defendant for the foreseeable future. He had earned a monthly salary of $1712, based on a five-day work week. Although he received all monthly salary due him, defendant refused to pay him any compensation in lieu of vacation for the period from November 24, 1979, through November 21, 1980. He was told that under defendant's policy, he had no accrued vacation for that period because he had not worked until his anniversary date. He then

---

[1] As the dissent points out, there are numerous other cases pending involving other employes terminated when the defendant sold its business. The parties should have ample opportunity to present different theories in those cases.

assigned this claim to the state for collection. The state sued to collect. Each party moved for summary judgment, each contended that no genuine issue of material fact existed, each filed supporting affidavits and each contended that the written vacation policy supported its position.

The majority holds that the trial court correctly decided in favor of the employer on its motion for summary judgment, because the employe did not fulfill the condition that he "be employed on his anniversary date in order to be entitled to paid vacation * * *."

I do not agree for two reasons. First, I believe the majority has incorrectly applied the law to this particular employe. The thrust of the opinion is the same as telling a marathon runner, with only a few yards left to go, "Sorry, but the race is called off." That is not only unfair, it does not square with the law.

Second, and perhaps more important, I believe there is a need for this court to identify and focus on the rights of a great number of similarly situated employes, who — as potential litigants — face the same problem as did Hoglen. This point is made obvious by defendant's affidavit, in which it is indicated that 131 finance offices were involved in this transfer and that all employes were treated the same as Hoglen.

The majority prefaces its decision with the observation that no contention is made that "the conditions of employment are ambiguous." The hint, which is surely more than a subtle one, is that a different result might have been reached in this case if the issue of ambiguity had been presented and argued by plaintiff. However, because plaintiff neglected to discuss the issue in its brief, the majority tells us that — for this reason alone — we are somehow rendered powerless to consider the matter. I simply cannot accept the notion that this court's role in resolving controversies is so limited. Granted, our fundamental function in the review process is to rule on assignments of error, but nowhere is it mandated that we must ignore other issues plainly before us that need to be resolved in order to decide a particular appeal.

That opposing parties both move for summary judgment cannot absolve the court of its duty to determine

for itself whether material facts are disputed, *Royal Industries v. Harris,* 52 Or App 277, 282-83, 628 P2d 418 (1981), even if on appeal the parties dispute only the law applied and not the facts to which that law applies. *See Hanneman v. Jones,* 45 Or App 1005, 609 P2d 912 (1980) (both parties moved for summary judgment on whether a reciprocal easement was appurtenant or in gross). We stated:

> "In the trial proceedings and here, both parties made arguments which presuppose that the language of the instrument is ambiguous and that the intent of its signatories must be ascertained from extrinsic evidence as well as from the language used. When an instrument is ambiguous, the intent of the parties is a question of fact. * * * Obviously, plaintiff relies on the deposition [as to intent of his predecessors in interest and on which he based his motion for summary judgment] to prove a material fact about which the parties disagree. In sum it is hard to imagine circumstances under which a summary judgment could be less appropriately sought or granted." 45 Or App at 1008-09.

That is not to say that the court can or should resolve the factual disputes. *But see Hanneman v. Jones, supra,* 45 Or App at 1010, where, despite the parties'. failure to argue ambiguity and despite the lack of a final, appealable judgment, we said:

> "In the interests of judicial economy * * * and assuming that [the parties will obtain an appealable decree without submitting additional evidence], we believe it appropriate to take the extraordinary step of stating our view of the matter, as if it were before us on *de novo* review."[1] (Footnote omitted.)

We need not be so extraordinary here in our pursuit of judicial economy[2] and a just result. But in order to decide the parties' dispute about whether the trial court properly

---

[1] *Hanneman v. Jones,* 45 Or App 1005, 609 P2d 912 (1980), was in equity; our review would have been *de novo* there. On remand, the trial court did take more evidence — held a full trial — and again reached the same result, with which we had indicated our disagreement. On appeal after trial, we adopted our original decision. *Hanneman v. Jones,* 58 Or App 10, 646 P2d 676 (1982).

[2] Judicial economy here would be served even more than in *Hanneman,* which involved but one case. Although this, too, is but one case, as noted above the record indicates that there could be many more on this same issue arising from the same vacation policy.

applied the law to the facts, we must know to what facts the trial court applied the law. Further, proper application of the law in any summary judgment requires that all facts material to that application be undisputed. ORCP 47C. That rule requires the court to determine from the documents of record, not from the parties' briefs, memoranda or arguments, that "there is no genuine issue as to any material fact * * *." In my view, review of that determination is part and parcel of our review of any alleged misapplication of law in a summary judgment proceeding.

We must view the record in the light most favorable to the party opposing the summary judgment motion, even as to issues on which that party would have the proof burden. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). In that light, I would review the case as follows.

Neither party expressly raised or argued that the policy was ambiguous on its face. Each argued for a different construction and for application of a different rule to effect the desired construction. The state's original position in its brief and at oral argument was that the policy does not specifically address Hoglen's situation of discharge before the anniversary date and not for cause; it argued for a rule that, where the employment contract does not address proration of vacation pay for such an employe, the law of unilateral contracts applies, as it would to a bonus, to require proration. *See Thompson v. Burr,* 260 Or 329, 490 P2d 157 (1971). Defendant argued that the contract did specifically address this case and provided expressly for no proration.

At oral argument, we asked both parties if the resolution depends on what the provisions here mean. Both agreed that it does. Defendant argued that apportionment depended on whether vacation pay was "earned" and that it was "earned" when the employe was "eligible," citing *Rose City Transit v. City of Portland,* 271 Or 588, 533 P2d 339 (1975). One member of the department then specifically asked if the several provisions here were not ambiguous as to whether "earning" and "entitlement" were equivalent. Defendant asserted that the word "eligibility" in Section 557.1 controls and was used by the Supreme Court in *Rose*

*City* to define "earned." Defendant further asserted that proration should apply only where the contract expressly provides for it.

The state rebutted that this case is not *Rose City,* conceded that Hoglen's situation was within the policies at issue,[3] and argued that proration was not expressly precluded as to Hoglen by those policies. The state then conceded that parties to an employment contract are free to negotiate a term precluding proration but argued that this contract was not clear that such a "forfeiture" was intended.

I agree with the state that this case is not *Rose City,* which involved pension rights interpreted according to the terms of the express collective bargaining agreement involved there. I also agree that cases construing agreements for paid vacations or vacation pay, like those for bonuses, turn on the wording of the particular agreement. *See Detrick v. Ranch Wholesale Supply of Redmond,* 57 Or App 28, 33, 643 P2d 1293 (1982), decided after this case was argued, where we applied a rule that, absent a showing of the parties' contrary intent, a bonus is due the employe for the part of the year he worked before his discharge.[4] That is directly contrary to the rule defendant would apply here. Because the vacation pay here was just as much part of agreed compensation as was the bonus in *Detrick,* I would apply the *Detrick* rule here.

---

[3] In its brief, the state stated that had Hoglen resigned, he would not have been entitled to vacation pay because "resignation would constitute a rejection of the offer for paid vacation" under the unilateral contract theory. It then footnoted Section 544.3, which is expressly to the contrary. At oral argument, the state argued that such a result would obtain if the contract did not apply to a resignation before the anniversary date. Defendant argued that the contract applied to resignation before or after the anniversary date. (Obviously, any resignation would come after the preceding anniversary date and before the following anniversary date.) The state then conceded that the contract did so apply and that had Hoglen resigned, he would have earned vacation pay owing. The state had not attempted the before/after argument before the trial court, which, therefore, could not have found that the state had conceded "earned" to mean "entitled to" in Section 544.3 and, by implication, in Section 544.21. We should accept the state's position as corrected at oral argument.

[4] That rule seeks to ensure that employment contracts be sufficiently specific that reasonable minds could not find the employer's intent to differ from the employe's reasonable expectation.

To prorate under *Detrick,* the court must find that the parties' contrary intent was not shown. To avoid proration, the court must find that a contrary intent was shown. I find the policy provisions ambiguous as to the parties' intentions. The ambiguity sticks out like a sore thumb. Even the majority is not blind to it. I cannot apply *Detrick* without resolving that ambiguity. I do not find anything in the sparse record that would allow me or would have allowed the trial court to resolve the ambiguity as a matter of law rather than of fact. On this record, reasonable minds could well differ on whether defendant's employes could earn vacation before being entitled to take it.

Here, as in *Hanneman,* the arguments of the parties on their motions and on appeal presuppose that the vacation-pay policy is ambiguous, despite their contrary protestations, because each interprets the language differently. Each relies not only on the written policy but on affidavits that demonstrate differing intentions and expectations based on the written words and on how the policy was applied to other employes. Defendant argues that Section 557.1 of the employment policies controls; defendant apparently would construe "entitlement" to define both when vacation is earned and when it may be taken. The state argues that Section 544 controls and expressly provides that, because Hoglen was not terminated for cause, he has earned 363/366 of the three-week vacation, which he has not taken (and presumably was not entitled to take until his anniversary date), and therefore must be paid for that time under Section 544.21. Thus, Hoglen's apparent understanding is that "entitlement" defines not when vacation is earned, but only how much may be earned and when it may be taken.

The policy terminology is not consistent. Section 544.21 provides that an employe dismissed other than for cause, "with vacation time earned but not yet taken, will be paid for that time." Section 557.1 does not define when vacation is "earned" but rather when an employe is "eligible" and to how much vacation an employe is "entitled." That is not necessarily the same as, yet not necessarily different from, the concept of "earned."

The record does not resolve the ambiguity. Neither does case law. The general rule in Oregon is:

"* * * By continuing in employment, * * * an employee is entitled, as a matter of contract, to either paid vacations or vacation pay in accordance with the policy or plan on that subject as established by his employer when the employee knows of that policy or plan and also in accordance with his 'reasonable expectations' based upon promises made to him by his employer." *Sabin v. Willamette-Western Corp.*, 276 Or 1083, 1089, 557 P2d 1344 (1976). (Footnotes omitted.)

In *Sabin,* the policy specifically provided that vacation was *earned* at the end of a year and was to be taken the following year. In *Sabin,* the "defendant's policy and [the] plaintiff's understanding and expectation were the same." 276 Or at 1089.

The policy is not so specific and the resulting ambiguity not so resolved in this case. The difference between defendant's alleged intent and Hoglen's understanding and expectation underscores the ambiguity. They, too, are fact questions, *see Sabin v. Willamette-Western Corp., supra,* that must be resolved to determine whether the written policy sufficiently shows the parties' intent not to follow the *pro rata Detrick* rule.

To have entered judgment here, the court either had to conclude as a matter of law that Hoglen's interpretation and expectation were unreasonable or had to resolve that genuine issue of materal fact and interpret the contract, which is not permissible on a motion for summary judgment. *See Royal Industries v. Harris, supra.* Viewing the facts in Hoglen's favor, I cannot say that his interpretation and expectation were unreasonable as a matter of law. Summary judgment was, therefore, improper under ORCP 47C.[5]

---

[5] Because I would not reach the merits of the case, I would not resolve whether penalty wages should be awarded.