Argued and submitted October 13, 1982, reversed and remanded March 23, 1983

McKEE et al,
*Appellants,*
*v.*
GILBERT et al,
*Respondents.*

(A8011-06240; CA A23585)

661 P2d 97

Paul R. Meyer, Portland, argued the cause for appellants. With him on the briefs were Jan D. Sokol, and Kobin & Meyer, P.C., Portland.

Frederick T. Smith, Portland, argued the cause for respondents Kerry S. Gilbert, Properties Personnel, Inc., an Oregon corporation, Paul E. Christensen, Allan R. Pike, David P. Weiner, Stanley M. Samuels, Rosalie B. Gilbert, George L. Campf, Frederic G. Wessinger, William Garn-jobst, James D. Hurst and Richard Herrera. With him on the brief was David D. Park, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondents Warren H. Ashmann and Joseph Harel. With him on the brief were George L. Kirklin and Spears, Lubersky, Campbell & Bledsoe, Portland.

Lawrence I. Evans, Portland, waived appearance for respondents Hyman Evans and Lilly Evans.

Morton H. Zalutsky and Zalutsky & Klarquist, P.C., Portland, waived appearance for respondent N. Dickson Davis.

Before Richardson, Presiding Judge, Joseph, Chief Judge,* and Van Hoomissen Judge.

RICHARDSON, P. J.

---

* Joseph, C. J., *vice* Thornton, J., retired.

## RICHARDSON, P. J.

■    Plaintiffs brought an action to rescind a sale agreement and for other relief based on allegations of unauthorized actions and breaches of fiduciary duties by partners. The parties filed cross-motions for summary judgment; plaintiffs appeal orders granting defendants summary judgment, denying them summary judgment and dismissing their complaint.[1] We conclude that summary judgment for defendants was improperly granted.

Three partnerships are involved in the suit. One partnership, known as "APTS," was formed by Murrell, one of the three plaintiffs, and defendants Gilbert and Properties Personnel Inc. (whose president, Christensen, is also a defendant). The three partners owned equal interests in the partnership. Gilbert, Murrell and Christensen were all real estate brokers, and APT"s purpose was to invest in particular pieces of real property, including one known as the Fairway Downs Apartments. To raise money, APTS decided to sell a part interest in the Fairway Downs Apartments. Each APTS partner located investors and those investors formed a joint venture, called "F-D Apartments" (F-D), which acquired a 60 percent interest in the Fairway Downs Apartments. The other two plaintiffs, Cohn and McKee, are the investors Murrell brought in to become joint venturers in F-D. The two partnerships, APTS and F-D, together formed a third partnership known as the "Fairway Downs Joint Venture" ("Fairway Downs"). Each partnership has a written partnership (or joint venture) agreement. The F-D agreement was executed in March, 1977, and the Fairway Downs agreement at the same time or shortly thereafter. The APTS agreement was put in writing in May, 1977, although the partnership had been in existence without a written agreement since February, 1976.

---

[1] Plaintiffs also appeal the denial of their motion for summary judgment. Ordinarily, under ORS 19.010, an order denying summary judgment is not an appealable order. *Hoy v. Jackson,* 26 Or App 895, 554 P2d 561, *rev den* 276 Or 735 (1976). Although in some cases after cross-motions for summary judgment we have entered judgment for a losing party who was entitled to prevail as a matter of law, *e.g., Cochran v. Connell,* 53 Or App 933, 632 P2d 1385, *rev den* 292 Or 109 (1981), that unusual procedure is not appropriate in this case.

The suit concerns an "Agreement for the SALE of REAL PROPERTY" by which F-D purported to sell its 60 percent interest in the Fairway Downs Apartments to third party buyers. Plaintiffs seek to rescind the agreement, claiming that the sale was not authorized under the terms of the agreements of the three partnerships. Defendants are the other partners in APTS and the other partners in F-D ("sellers") as well as the buyers, Ashman and Harel ("buyers"). Other alleged grounds for rescission include breaches of fiduciary duty by various defendants. Plaintiffs also seek an accounting on the basis of the alleged breaches, including the unauthorized sale.

In January, 1980, a meeting of the Fairway Downs Joint Venture was held, at which there was a discussion about selling the building. Murrell stated his understanding that under the partnership agreements all partners of APTS would have to consent to the sale. A second meeting was held in April. Although Cohn and McKee desired to remain investors, they did not attend, believing that Murrell would be able to veto the sale. Two offers were presented, one to purchase the entire property and one to purchase F-D's 60 percent interest. Defendant Samuels, a partner in F-D, moved that the F-D partners accept in principle both of the offers and defer to APTS to decide which one to accept. It is undisputed that under F-D's joint venture agreement the requisite percentage of F-D interests were voted in favor of the motion.[2] Defendant Christensen moved that APTS accept in principle the offers and F-D's resolution and begin negotiations with the potential buyers. According to the minutes of the meeting, Murrell declined to vote, "thereby voiding the motion."

At a June meeting of the APTS partnership, one partner moved to approve acceptance of the offer to purchase F-D's 60 percent interest. Murrell voted against the motion. Gilbert and Christensen wrote Weiner, an F-D partner, that APTS had approved the sale by a majority vote and indicated their belief that only a majority vote of

---

[2] Plaintiffs contend that the vote was improper, because notice of the meeting was insufficient under F-D's partnership agreement and because conflicts of interest on the part of two defendant partners prevented them from voting. Because of our disposition of the case, we neither address those contentions here nor set out the related facts in detail.

APTS was necessary under the agreements. A contract of sale to buyers was executed.

After plaintiffs filed suit for rescission and an accounting, buyers as well as sellers moved for summary judgment. Both groups of defendants also made alternative motions for partial summary judgment on the claim for relief alleging that the sale was unauthorized. Plaintiffs then moved for summary judgment. After defendants' motions were granted and plaintiffs' denied, plaintiffs unsuccessfully requested reconsideration, urging, *inter alia,* that summary judgment should not have been granted because there were material issues of fact.

A major disagreement between the parties is whether, as plaintiffs argue, the unanimous consent of APTS partners was required before APTS could consent to the sale of F-D's interest in the apartment house. We conclude that the partnership agreement is ambiguous and that the documents before the court reveal a question of fact.

It is not disputed that the Fairway Downs agreement requires at least the consent of APTS as a partnership for sale of F-D's interest in the property that was the subject of the F-D-APTS Fairway Downs Joint Venture Agreement.[3] The question is whether, in order for the APTS partnership to agree to the sale, all of the APTS partners were required to consent.

■ Defendant sellers first contend that plaintiffs do not have standing to assert violations of the Fairway Downs agreement. They argue that the parties to the Fairway Downs agreement are the two partnerships, APTS and F-D,

---

[3] The Fairway Downs Joint Venture Agreement provides:

"15. *Restrictions on Transfer or Encumbrance of Interest:* No Owner shall sell, convey, transfer, mortgage, or otherwise dispose of, or encumber his undivided interest in the property, without first obtaining the written consent of the other Owner. The consent may be subject to such terms and conditions as the other Owner may determine."

Under paragraph 8, "Voting," section (d) states:

"An affirmative vote of 100% of the interests shall be required for the sale, trade, lease, mortgage or other disposition or encumbrance (which includes refinancing) of all or a substantial part of the property, and for the termination of this Agreement."

and that individual partners are not entitled to assert the right of the partnership in an action for breach of the agreement. We need not consider the standing question as it relates to that agreement. Each plaintiff is a party either to the APTS agreement or the F-D agreement and has standing in this action that raises the question whether those agreements were breached.[4]

The dispute as to the vote required to consent to the sale centers on the APTS partnership agreement, which contains several paragraphs pertaining to decision-making. Regarding construction, it states:

"6. *Construction.* All matters relating to this Partnership Agreement shall require the affirmative vote of all of the Partners unless it is specifically indicated that a smaller number is required. Whenever it is stated herein that the matter is to be decided by the 'partnership', it shall mean the affirmative vote of the Partners owning more than fifty percent of the partnership interests. A partner shall have a vote in the partnership valued according to his interest in the partnership as determined in paragraph 14 herein."

The provisions of the APTS agreement on which the parties focus indicate different votes required for different kinds of decisions:

"17. *Management and Voting.* Each partner shall have the power to make ordinary management decisions without consulting the other Partners. In the carrying out of any management decision, a partner may spend up to $500.00 without consulting any of the other Partners. *Management decisions relating to non-ordinary matters connected with the operation and affairs of the Partnership, including, but not limited to, the purchase, sale or refinancing of any real property, shall require the unanimous consent of all Partners.* Unanimous consent shall also be required for admittance of any new partner.

"18. *Relationship of the Partners.* Each partner shall be faithful to the other Partners in all transactions relating to the partnership business and give, whenever required, to the other Partners a true statement and accounting of all partnership business transacted by him. *No*

---

[4] Defendant sellers assume that we may only consider the APTS agreement if we find that plaintiffs had standing to sue for breach of the Fairway Downs agreement. However, plaintiffs alleged breaches of all three agreements.

*partner shall, without the written consent of the partnership:*

"(a)   Borrow money in the partnership name for partnership purposes or utilize collateral owned by the partnership as security for such loans;

"(b)   Assign, transfer, pledge, compromise or release any of the claims of or debts due the partnership in excess of more than $500.00, except upon payment in full, or arbitrate or consent to the arbitration of any of the disputes or controversies of the partnership;

"(c)   *Make,* execute or deliver *any* assignment for the benefit of creditors or any bond, confession of judgment, chattel mortgage, deed, guaranty, indemnity bond, surety bond, or *contract to sell which has any effect on the property of the partnership;*

"(d)   Mortgage any partnership real property or any interest therein or enter into any contract for any such purpose;

"(e)   Engage, on behalf of the partnership, in any unusual transaction or act outside of the scope of the partnership business;

"(f)   Enter into any contract obligating the partnership for more than $500.00;

"(g)   Assign all or any part of his share or interest in the partnership or attempt to introduce any person into the business of the partnership;

"(h)   Knowingly do any act by which the interests of the partnership shall be imperiled or prejudiced; and

"(i)   Hire or dismiss, except in the case of gross misconduct, any person in the employ of the partnership." (Emphasis supplied.)

Plaintiffs contend that approval under the Fairway Downs agreement of the sale of F-D's 60 percent interest was a "non-ordinary" matter, requiring unanimity under paragraph 17. They buttress their argument by noting that the partnership purpose, as stated in the agreement, is to invest in "the real property described or such other real property as the Partners may unanimously agree to add to this partnership." The agreement listed three properties, one of which was the Fairway Downs Apartments.

Defendants contend that paragraph 18(c) of the APTS agreement applies, rather than paragraph 17, and that what APTS has done is not to sell real property, as described in paragraph 17, but to "make * * * (a) contract to sell which has [an] effect on the property of the partnership" as described in paragraph 18. Under that paragraph such action requires "the written consent of the partnership," which according to paragraph 6, refers to the vote of partners owning more than 50 percent of the partnership interests. The "real property" referred to in the provision requiring unanimous consent, they argue, must be real property owned by APTS.

Plaintiffs argue that, if paragraph 17 does not clearly apply, the agreement is at best ambiguous. We find it to be ambiguous. It is not clear whether the approval of the sale of F-D's interest falls within the provisions of paragraph 17 of the APTS agreement or paragraph 18. It is true, as defendants point out, that paragraph 17 refers to the "sale of real property" and the decision in controversy did not involve any real property owned by APTS. They also argue that real property *per se* was not sold, but rather a partnership interest. Nevertheless the unanimity requirement is described as "including, but not limited to" transactions involving real property. Thus the characterizations of the decision urged by defendants do not settle the matter. Arguably, approval of this transaction was a "management decision relating to non-ordinary matters connected with the operation and affairs of the partnership * * *." "Non-ordinary matters" requiring unanimous consent could reasonably be interpreted to include a decision as important as approval of the sale of an interest in property jointly-owned by APTS and a joint venturer. Even though no property of APTS was the subject of the sale agreement, Fairway Downs was one of the three property investments indicated as APTS "nature of business." Sale of F-D's interest is a sale of a controlling interest, and changes the identity of a joint venturer.

Arguably, it is also reasonable to interpret the contract to the effect that the decision is one requiring the "consent of the partnership," *i.e.*, two of the three partners, under paragraph 18. Defendants suggest that under the rule of construction requiring that specific prevail over

general language, ORS 42.240, paragraph 18(c) controls over paragraph 17. However it is not clear whether the parties intended *approval* of a sale to be included in the making of a "contract to sell which has [an] effect on the property of the partnership." This decision does affect real property of the partnership as it determines the controlling interest in the property. It should also be noted that paragraph 18 refers specifically to other decisions that appear as major as this one, such as mortgaging partnership real property, under paragraph 18(d), or entering into "unusual transaction[s]," under paragraph 18(e).

Because the agreement is ambiguous, extrinsic evidence may be considered in determining the intent of the parties. Murrell's affidavit indicates that he understood unanimity would be required. It may be inferred from the affidavits that when Murrell brought Cohn and McKee into the investment they were assured that unanimous consent would be required for any disposition of the property and that Murrell would be able to protect their interests. We note that the APTS contract was drafted after the other two. Plaintiffs also point to one of defendant's exhibits, the minutes of the April 22 meeting, as evidence that the parties interpreted the agreement to require unanimous approval by the APTS partners before F-D could sell its interest. The minutes stated that plaintiff Murrell's failure to vote "voided the motion" that APTS accept both offers and negotiate with the buyers.[5] The agreement and the affidavits raised a question of fact regarding the intent of the parties as to whether unanimity was required for this kind of transaction. Summary judgment was thus inappropriate.

Citing *Leiser v. Sparkman,* 281 Or 119, 573 P2d 1247 (1978), defendants contend that plaintiffs are precluded by the position they took below from arguing on appeal that there were questions of fact precluding summary judgment. In support of their argument, defendants

---

[5] One of the offers was to purchase 100 percent of the interest in the apartments. No one disputes that acceptance of that offer would require unanimity. However, the other offer was to purchase F-D's interest only. It is unclear whether the statement in the minutes implies that the two offers were treated alike, or that because the motion was void as to one offer it was also void as to the other.

rely on plaintiffs' motion for summary judgment, which asserted that there were no material issues of fact. They also contend that plaintiffs stipulated that there were no material issues of fact.[6]

Defendants concede that there is no explicit stipulation in the record, maintaining that it was made in chambers, off the record, and is alluded to in the record. They assert that plaintiffs stipulated that there were no material issues of fact, that the agreements were unambiguous and that the court should decide the case based on the language of the documents. The record indicates that the court was reluctant to hear the case, because of personal acquaintance with some of the parties, and that counsel assured the court that the credibility of witnesses would not be in issue.[7]

---

[6] There is no contention that the parties actually intended trial on a stipulated record. *See Gourley v. O'Donnell,* 51 Or App 477, 626 P2d 367 (1981).

[7] The court made the following statements when plaintiffs urged reconsideration on the ground that there was a genuine issue of material fact:

"THE COURT: * * *

"I specifically asked counsel if that was going to be an issue in this case, because I knew some of the people involved. I was not willing to hear the case if there was questions of credibility of the witnesses.

"* * * * *

"* * * I went ahead and heard it. I did it because I couldn't find another Judge to do it.

"* * * * *

"I think I stated when I was trying to find another Judge to hear the case that I would not be willing to hear the case if there were any issue as to the credibility of the witnesses' testimony, and my recollection is that I was assured that that would not be an issue and that the matter was being tried on the documents.

"Also, as I recall, — and I don't know if there is a transcript of this — but I think I asked at the outset if anyone contended that there was — well, that this was not an appropriate case for summary judgment. I am not certain of that, but I have the impression it was represented to me that everyone agreed that the case ought to be decided on summary judgment.

"* * * * *

"* * * I think I have been induced perhaps to make an error. You have convinced me I may have erred, and I think I was induced to by the way the case was presented.

"If you didn't want it decided on the summary judgment you shouldn't have filed it and come up here and indicated that.

"* * * * *

■    Even if the parties had expressly stipulated that the case could be decided on summary judgment, the stipulation would not be controlling. *See Hanneman v. Jones,* 45 Or App 1005, 1009, 609 P2d 912 (1980).[8] Neither would we give effect in this case to a stipulation that the contract was unambiguous and that there were no material questions of fact. ORCP 47C states that summary judgment shall be rendered if

---

"* * * [N]o argument was made at the time that there was a question of fact of — on one and not on the other. No representation was made to me that there was a question of fact, that I can recall."

At the summary judgment hearing, the court raised the question whether construction of a contract was appropriate in summary judgment or whether it was a factual question. One counsel for plaintiffs stated:

"It occurs to me that the parties have both urged to the Court that a particular paragraph and a particular agreement is dispositive, and they have both urged that it is clear and unambiguous and doesn't require parol evidence for its construction.

"I think it goes without saying that there is no genuine issue of fact as to the genuineness of the document or anything else, and the Court is simply asked to construe the language of a contract which is contended by both parties to be clear and unambiguous.

"It seems to me that it's a matter of law."

The discussion continued as follows:

"THE COURT: My concern is, just thinking out loud, that some of the people involved in the litigation say in their affidavits that they understood the document to mean one thing and others evidently understood it to mean something else."

Plaintiffs co-counsel added:

"I think in the first instance, if the Court determines that it's unambiguous, the dispute in the affidavits are not relevant and have no meaning to you."

[8] In *Hanneman,* plaintiffs sought a declaratory judgment and injunction in opposition to defendant's claim of easement. The question was whether the easement was appurtenant or in gross and required interpretation of an ambiguous easement. *Cross-motions for summary judgment were filed; both parties submitted* extrinsic evidence to aid in interpretation of the instrument. We stated:

"After the cross-motions for summary judgment were filed, defendants' counsel stated in a letter to the court that '[a]ll parties have agreed to submit this case on the record at this point without the taking of any further evidence on the issue of whether the easement is appurtenant or in gross.' Clearly, the parties were entitled to stipulate that the case could be tried without further amplification of the record. However, the parties could not agree that, if a controverted and material factual question existed in the record, the court could decide the case *by summary judgment* without determining that factual issue. *See* former ORS 18.105(3)." 45 Or App at 1009. (Emphasis in original.)

"* * * the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

Thus, a court is not empowered to render summary judgment where a genuine question of material fact appears. *See Hanneman v. Jones, supra.* To do so would require the court to resolve an issue of fact, which is not appropriate in a summary judgment proceeding. *Klimek v. Continental Ins.,* 57 Or App 435, 441, 645 P2d 553 (1982).

■ Because plaintiffs' position that the contract was unambiguous and that there were no material issues of fact was part of their stance in moving for summary judgment, we understand defendants' argument to rest in part on the claim that the filing of cross-motions for summary judgment amounted to a stipulation that there were no material issues of fact. We disagree. Each party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). That each party contends there is no factual dispute does not relieve the opposing party of the burden to make that demonstration with respect to his own motion. That one party fails to satisfy the burden on his own motion does not imply that the opposing party has satisfied *his* burden and should be granted summary judgment. *Cf. Hanneman v. Jones, supra; but see State ex rel Roberts v. Public Finance,* 59 Or App 234, 651 P2d 728, *rev allowed* 294 Or 295 (1982); *Jones v. Jaquith,* 44 Or App 727, 606 P2d 1179, *reconsideration granted and reversed* 46 Or App 671, 612 P2d 770, *rev den* 289 Or 677 (1980).

■ Defendants also appear to argue that plaintiffs should have *explicitly* contended below that issues of fact precluded summary judgment for defendants. Plaintiffs are not precluded from arguing on appeal that defendants did not meet their burden to show that summary judgment for them was justified.[9]

---

[9] Defendants contend that the argument was not made until oral argument on the motion for reconsideration. The motion for reconsideration urged that various trial court conclusions were "contrary to the law and not supported by the facts," and the accompanying memorandum of law urged that defendants had not met

■    We do not find this case to be controlled by either *State ex rel Roberts v. Public Finance, supra,* or *Jones v. Jaquith, supra,* both contract actions in which we found summary judgment warranted after cross-motions. In neither case did we find a factual issue *raised by the documents* that was *material.* In this case, because we conclude the agreement is ambiguous, the question of the parties' intent is material, and the affidavits indicate that the parties had differing understandings regarding the meaning of the contract. As in *Royal Industries v. Harris,* 52 Or App 277, 628 P2d 418 (1981) (where we found summary judgment improper after cross-motions), this agreement is ambiguous on its face and in combination with the affidavits raises an issue regarding the intent of the parties.

Because we find that this question of fact regarding authorization made summary judgment improper, we need not address the other grounds alleged by plaintiffs for the impropriety of summary judgment. Defendants' motions for partial summary judgment were based on the authorization issue, and thus it would have been inappropriate to grant those motions as well.

In their first claim for relief seeking rescission of the sale, plaintiffs alleged that defendant buyers knew defendant sellers were not authorized to sell. Defendant buyers concede in their brief that because they did not controvert plaintiffs allegation of knowledge, it must be taken as true for purposes of summary judgment. Because there was a genuine issue of fact regarding the authority to sell the property, defendant buyers' motion for summary judgment was also improperly granted.

Plaintiffs also appeal the trial court's award of attorney fees to defendant-sellers. Our disposition of the case makes it unnecessary to consider that assignment of error.

Reversed and remanded.

---

their burden to establish there were no genuine material issues of fact. Defendants also point out that plaintiffs objections to their "Proposed Findings of Fact and Conclusions of Law" did not include an objection to the provision referring to the stipulation that there were no ambiguities or questions of fact raised by the documents. The findings were never entered, because none was requested prior to the hearing.